ROBERT JOSEPH HILL, a minor by FLORENCE HILL, his next friend, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, Appellant, TONY TROLLINGER, Defendant, No. 41168—221 S. W. (2d) 130.

Division One, June 13, 1949.

*Mattingly, Boas & Richards* and *Lloyd E. Boas* for appellant.

*Mark D. Eagleton, Mortimer A. Rosecan* and *Wm. H. Allen* for respondent.

 DALTON, C.—Action for damages for personal injuries. Plaintiff, a passenger in a bus of defendant St. Louis Public Service Company, was injured when the bus collided with a truck operated by defendant Trollinger. Verdict and judgment were for plaintiff for $22,500 against defendant St. Louis Public Service Company alone and it has appealed. Error is assigned on the giving of Instruction No. 1, on the admission of evidence, on the argument of counsel and on an alleged excessive verdict.

Appellant was charged with general negligence under the res ipsa loquitur doctrine and the cause was so submitted by Instruction No. 1. Appellant contends the submission was erroneous because respondent's evidence ("the testimony of plaintiff himself") clearly showed the specific cause of the collision producing his injuries and that appellant did not have the exclusive management and control of the instrumentality causing such injuries.

It was admitted that appellant was a common carrier of passengers for hire; that respondent, on February 28, 1947, was a passenger on one of its Barracks line busses operating on Kingston avenue in St. Louis county; and that there was a collision between appellant's bus and a truck owned and operated by defendant Tony Trollinger. Respondent got on the bus about 10 p. m. It was snowing, but not freezing. The temperature was about 35 degrees and the snow was melting so that there was slush on the pavement. Respondent sat near the center of the bus on the left-hand side next to a window. As the bus was proceeding east on Kingston avenue, it was traveling "at least thirty-five miles per hour." There was little traffic, but the bus passed an automobile "a few minutes before the accident." According to respondent's best knowledge the bus was traveling in the center of the highway, he "could see the other side of the highway, and it looked pretty close." He did not know where the bus was being operated at the time of the impact, or whether it had gotten over on the right-hand side of the highway or not. He felt no application of brakes or any decrease in the speed of the bus before the impact of the collision. Although he was looking out, he never at any time saw the truck with which the bus collided and didn't know where the truck or bus were located after the collision. The first he knew "that there was an accident" was when he "heard the vehicles collide." He was thrown out of his seat, his left leg was caught and the tibia or large weight bearing bone was broken and part of the flesh on his leg and heel was torn off.

On cross-examination and in answer to leading questions, the respondent testified that, prior to the collision, he thought the bus was "going pretty fast"; that, in his opinion, the bus driver was driving entirely too fast and on the wrong side of the road; and that, in his opinion, that was what caused the accident. The cross-examination continued: "Q. The bus driver came around an auto-

mobile right at the top of the hill? A. Yes, sir. Q. And he never did get back over on his side of the road? A. No. Q. He stayed over on the left side of the road? A. Yes. Q. And continued to drive there? A. Yes. Q. For how far? A. Until the accident. Q. Until the accident: you knew he was driving there? A. Yes, sir. . . . Q. Were you somewhat concerned about the fact that this bus driver was operating on the left-hand side of the road at an excessive speed? A. Yes, sir. . . . Q. Now, was there any other traffic at all on the road that you recall? A. No, sir. . . . Q. Of course you don't know anything about the truck, where it was operated? A. No, sir.''

Respondent offered no evidence concerning the operation of the truck, either as to its speed, location or direction of movement on the highway, or as to where or how it collided with the bus. That the bus collided with a *truck* was assumed as follows: ''Q. Did you ever see the truck with which this bus collided at any time before the accident? A. No, I didn't. Q. Did you ever see it after the accident? A. No, I didn't.'' The petition charged that the bus had collided with an automobile, but appellant's answer admitted a bus and truck collision. Respondent's evidence didn't undertake to show the facts attending the collision other than as stated in respondent's testimony.

The evidence of appellant and Trollinger tended to show that the bus and the truck were traveling in opposite directions on the same highway; that they ''side swiped'' each other; and that ''the whole left side of the bus was ripped out and for a distance of about 20 feet.'' Each defendant sought to shift the blame for the collision to the other by showing that the other was over the center line of the highway. This evidence did not require respondent to submit his case on specific negligence. Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 S. W. (2d) 797, 802(13). While there was no dispute about the fact of a collision, respondent's pleadings and evidence did not disclose its specific cause.

Appellant relies upon the well established rule that, although a petition charges general negligence, if the evidence shows the precise and specific negligence which caused the injury, it is error to submit the case by instructions on general negligence. Williams v. St. Louis-San Francisco R. Co., 337 Mo. 667, 85 S. W. (2d) 624, 636; Belding v. St. Louis Public Service Co., En Banc, 358 Mo. 491, 215 S. W. (2d) 506, 510. Appellant cites Grimes v. Red Line Service, 337 Mo. 743, 85 S. W. (2d) 767, 769(1) and other cases where the words ''if the evidence *tends to prove* specific negligence,'' are used. (Italics ours). In view of later decisions it is clear that such evidence must be sufficient to make a submissible issue of the specific negligence shown.

In this connection it has been said: "A plaintiff can neither definitely state nor show that his injury was caused in a certain way and then allow the jury to speculate on whether it was caused in some other way." Sanders v. City of Carthage, 330 Mo. 844, 51 S. W. (2d) 529, 531; Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S. W. (2d) 825, 830. "When . . . the plaintiff pleads general negligence and by the pleading invokes the aid of the res ipsa loquitur doctrine, he does not lose or waive the benefit thereof, and the right to rely thereon in the submission of the case to the jury, by introducing evidence tending to show specifically the cause of the accident if by the evidence the cause is still left and remains in doubt or is not clearly shown, but where the real or precise cause is definitely shown, and is not left in doubt, 'there is no occasion or room for the' presumption or inference which the res ipsa rule affords. 'The plaintiff is bound by his evidence in a res ipsa case just as he would be in any ordinary negligence action and can not in effect say to the jury, "I have shown you exactly how the accident occurred but you are, nevertheless, still at liberty to speculate and presume it may have happened some other way." ' Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S. W. (2d) 21, 25, and cases there collected and cited." Powell v. St. Joseph Ry. Light, Heat & Power Co., 336 Mo. 1016, 81 S. W. (2d) 957, 960; Whitaker v. Pitcairn, 351 Mo. 848, 174 S. W. (2d) 163, 168; Belding v. St. Louis Public Service Co., supra.

Appellant argues that the case was tried upon the theory that the bus was operating at an excessive speed on the left side of the road; and that respondent's counsel and defendant Trollinger's counsel argued the case to the jury on that basis. The matter of argument, however, does not rule appellant's assignment of error. Whether a speed of thirty-five miles per hour upon a paved highway was a negligent speed depends upon the detailed facts and circumstances attending such operation. Sec. 8383 R. S. 1939. Whether the operation of a vehicle to the left of the center of the highway was a negligent operation depends upon the detailed facts attending such operation. See Sec. 8385 R. S. 1939. Whether a vehicle is being operated as close to the right-hand side of the highway as practicable depends upon the facts. Whether negligence, if any, as to the speed of operation, or negligence, if any, as to the place of operation of the bus upon the highway was the direct and proximate *cause* of a collision between such bus and another vehicle necessarily depends upon the detailed facts and circumstances attending such collision. In the absence of any facts tending to show the direction, speed and location of operation of the other vehicle, or of the circumstances attending the collision, such as to where and how the collision occurred, it can not be said that respondent's evidence showed "the specific cause of the collision" or the specific negligence, if any, of the

bus operator which caused respondent's injuries. Even assuming that appellant was negligent in the respects mentioned, respondent's evidence was insufficient to show that such specific negligence, if any, caused or directly contributed to produce the collision and injury. On the record presented in this case, we hold that respondent's evidence did not clearly show the precise or specific negligent acts or omissions on the part of the appellant which *caused* the collision and resulting injuries, so as to exclude a submission of the cause under the res ipsa loquitur doctrine. After all of respondent's evidence was in, the true cause of the collision and injury remained in doubt. Belding v. St. Louis Public Service Co., supra (215 S. W. (2d) 506, 510); Semler v. Kansas City Public Service Co., 355 Mo. 388, 196 S. W. (2d) 197, 200; Whitaker v. Pitcairn, supra (174 S. W. (2d) 163, 168).

 Appellant next contends that, because it had no right of control over the truck which collided with the bus, the cause of action could not be submitted under the res ipsa loquitur doctrine. None of the cases cited are passenger and carrier cases. Appellant argues that respondent's submission of the cause as against Trollinger on the ground of negligence in operating his truck to the left of the center of the highway shows that an inference could as readily be drawn that his negligence caused the injury. This submission was based upon all of the evidence in the case. The contention of error must be overruled. It is well settled in this jurisdiction that where the plaintiff is a passenger on a vehicle of a common carrier and is injured because of a collision between such vehicle and a vehicle operated by a third person, the fact that such other vehicle is not under the carrier's control does not prevent the submission of the cause under the res ipsa loquitur doctrine. Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S. W. (2d) 654, 658 and cases cited therein; Powell v. St. Joseph Ry. Light, Heat & Power Co., 336 Mo. 1016, 81 S. W. (2d) 957, 958; Kapros v. Pierce Oil Corp., 324 Mo. 992, 25 S. W. (2d) 777, 782; Williamson v. St. Louis & M. R. R. Co., 133 Mo. App. 375, 377, 113 S. W. 239; Augustus v. Chicago, R. I. & P. R. Co., 153 Mo. App. 572, 582, 134 S. W. 22.

 Was there error in the admission of evidence? Dr. Joseph L. Ferris testified that, after a skin graft on plaintiff's leg had healed over, it broke and sloughed off on account of insufficient blood supply; and that the sore eventually healed over again and, at the time of the trial, the wound was covered with a very thin layer of free skin which had reached its maximum thickness, but was susceptible to being "opened from the most trivial injury." He was then asked: "Q. And if it opens will he have the same or more difficulty in getting it closed again?" Objection was made on the ground of "being entirely speculative; there is no evidence that it will, and the doctor hasn't testified." The objection was overruled and he answered:

"A. Yes, I expect that he will." A motion to strike the answer on the grounds previously stated was overruled. Subsequently, without objection, Dr. L. G. Pernoud testified: "A. Yes, the skin on the front of the leg which has an area which is now about . . . three and a half inches by. two inches, the skin covering over that is not healthy skin at all; it is very thin scar tissue and it is liable to damage or to breaking open and ulcerating because it has done it even during my observation after it would be completely healed and then it would break open and ulcerate and then it would heal up and that process might continue so; it has weakened the tissue."

Appellant contends that Dr. Ferris's answer constituted "no more than the wildest speculation and conjecture"; and that there was no evidence "from which the jury could find that the plaintiff's leg would ever be opened up again." Appellant says that permitting the answer "had the effect of permitting the jury to allow compensation to plaintiff for some possible future difficulty that might result from some possible future injury which might possibly open up plaintiff's leg." Appellant argues that the answer had no probative value, did not constitute substantial evidence and should have been stricken out on his motion. No such grounds were assigned in support of the motion to strike. Appellant further says that the question called for an opinion based upon an opinion, but no such objection was made. Carroll v. Missouri ▮▮▮ Power & Light Co., 231 Mo. App. 265, 96 S. W. (2d) 1074, 1079.

It must be remembered that Dr. Ferris was testifying as an expert witness. His answer was in effect an expression of an opinion, subsequently confirmed by the testimony of Dr. Pernoud. See 32 C. J. S. 365, Sec. 555. We do not think the trial court abused its discretion in permitting this expert witness to answer the question. See Fair Merc. Co. v. St. Paul Fire ·& Marine Ins. Co., 237 Mo. App. 511, 175 S. W. (2d) 930; In re Stein's Estate (Mo. App.), 177 S. W. (2d) 678, 683. Clearly, when the cause was submitted, there was evidence in the record tending to show that in all reasonable probability the skin over this wound would break or be broken open and that further difficulty would be encountered. In any case in view of the whole record we do not believe the appellant could have been so prejudiced by the admission of this evidence as to justify a reversal of the judgment.

▮▮▮ Appellant contends that "the court erred in permitting plaintiff's counsel to argue, over objection of defendant's counsel, improper and prejudicial matters not within the issues involved in the case." Appellant chiefly complains of a request for judgment against both defendants, a statement not "to worry about collecting the judgment," a statement that any amount given the plaintiff would be held under the supervision and custody of the court and an argument that the evidence was sufficient to support a finding of appellant's

negligence in various particulars referred to in the evidence. Appellant insists that the argument conflicted with the res ipsa loquitur submission. After a careful review of the several assignments and all of the argument we have reached the conclusion that all of the matters complained of were within the discretion of the trial court and that no abuse of that discretion appears. Burow v. Red Line Service, 343 Mo. 605, 122 S. W. (2d) 919, 921. Considering the several matters both individually and collectively, we find no reversible error.

Was the verdict excessive? Respondent was fourteen years of age and a high school freshman at the time he was injured. He was in good health, took regular gymnasium work in school and played football with his "gang" around the neighborhood. He sustained a complete compound fracture of the tibia of the left leg, an oblique fracture through the middle third of the shaft, with displaced fragments. The end of the bone pierced the flesh, leaving a puncture wound and extensive damage to the soft tissues on the posterior surface of the leg, a part of the flesh was torn away. The injury was accompanied by much pain and swelling, an infection developed with attendant reactions. The skin over the front part and middle third of the leg became gangrenous and sloughed off. There was also sloughing of the tissues about the wound on the back of the leg. An inflamed and ulcerous condition developed over an area four by five inches and refused to heal over. Respondent remained in the hospital some nine weeks. Later, on August 4, 1947, he returned to the hospital and a skin graft was made covering an area of some 3½ inches. Some 16 days later, after the skin grafting was complete and the wound had healed, he returned to his home, but shortly thereafter the wound broke open and the skin graft sloughed off, due to lack of sufficient blood supply resulting from the injuries. Finally, the wound healed over with a very thin layer of skin.

The fracture has healed with considerable callus, but the ends of the bone are not in apposition as to about one-third of their area. There is also a slight bowing of the tibia backward "so that the weight-bearing line is considerably disturbed." "The bones are supposed to join each other over a wide surface and when there is a distortion then it throws the ankle joint a little forward so that in his instance he would bear most of his weight on the front part of the ankle joint instead of generally over the ankle joint. If he does that over long periods it will give him some pain." There is a loss of function in the ankle joint, that is, a restriction in all motions of the ankle and foot, of approximately five percent due to scarring and the contraction of the muscles and blood vessels. The restriction does not interfere with walking, but walking or use will cause swelling due to the restrictions in the normal blood supply. The damage to the blood vessels and soft tissues of the leg resulting

in a lessening of the normal blood supply are permanent and there is a permanent condition of pain in the leg. When he uses the leg, walks on it, swelling takes place and he has pain, and pain "will occur throughout the remainder of his life." As a result of the scarring, atrophy and injury to muscles and ligaments, the leg above the ankle is one inch less in circumference than his right leg.

On the advice of his physician he wears an Ace bandage, or elastic support around his leg, the bandage extends over his instep .and around behind his heel, well over his ankle and up within some six inches of his knee. His leg has reached its maximum improvement and, as he gets older, he will have more trouble with swelling from movement and use. If he uses the leg to any great extent the entire lower six inches of his leg, his ankle, instep, foot and toes will become swollen. Dr. Pernoud testified: "He certainly couldn't play a game of football or a game of baseball because just as sure as he does that he will have some secondary inflammation, and he will have a lot of swelling and he will have a lot of· pain and whenever this swelling takes place it creates more destruction and more damage each time."

The motion for a new trial was not ruled by the trial court, but was "deemed denied" under Sec. 119 of the Code of Civil Procedure, Laws 1943, p. 389. By consent of the parties, a memorandum was filed stating that, if time had been available, the court would have required a $6500 remittitur. Apparently, such a remittitur is agreeable to respondent, as his brief states that "upon a remittitur of $6500, the judgment in this case should be affirmed for the sum of $16,000 as fair and reasonable compensation for his injuries." Appellant, however, insists that the verdict is so grossly excessive as to show passion and prejudice on the part of the jury. Appellant suggests that $6000 would be adequate and cites McNatt v. Wabash R. Co., 341 Mo. 516, 108 S. W. (2d) 33; Osby v. Tarlton, 336 Mo. 1240, 85 S. W. (2d) 27; Wulsch v. Inland Valley Coal Co. (Mo. App.), 63 S. W. (2d) 423. These cases are not particularly helpful.

The maximum amount which the evidence will support is a most difficult question. The verdict is grossly excessive, but we think the error may be cured by remittitur without a reversal of the judgment. There is no definite rule by which the amount which should be permitted to stand can be determined. Each case must be considered upon its own peculiar facts and some consideration must be given the decrease in the purchasing power of money and to the matter of maintaining some reasonable uniformity in the matter of verdicts for similar injuries. Joice v. M-K-T. R. Co., 354 Mo. 439, 189 S. W. (2d) 568, 577; Van Campen v. St. Louis-San Francisco R. Co., 358 Mo. 655, 216 S. W. (2d) 443, 449.

Considering the evidence of injuries in a light most favorable to respondent, we think the verdict is excessive by $7500. Compare Morris v. Atlas Portland Cement Co., 323 Mo. 307, 19 S. W. (2d)

865, 878; Beebe v. Kansas City, 327 Mo. 67, 34 S. W. (2d) 57, 58; O'Brien v. Vandalia Bus Lines, 351 Mo. 500, 173 S. W. (2d) 76, 78; Willis v. Atchison T. & S. F. R. Co., 352 Mo. 490, 178 S. W. (2d) 341, 346; Turner v. Central Hardware Co., 353 Mo. 1182, 186 S. W. (2d) 603, 610; Hill v. Terminal R. Ass'n., 358 Mo. 597, 216 S. W. (2d) 487, 493.

If respondent will, within fifteen days from the date of filing this opinion, enter here a remittitur of $7500, the judgment for $15,000, as of the date of the original judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded because of an excessive verdict. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON C., is adopted as the opinion of the court. All the judges concur.