[1] This is an action for damages for personal injuries sustained by plaintiff, Clara Rothweiler, in a collision between a bus of defendant St. Louis Public Service Company in which she was riding as a passenger and an automobile owned and operated by defendant William Edward Cordia.
[2] The accident occurred on July 21, 1947, at the intersection of Shenandoah Avenue and Eleventh Street, in the City of St. Louis.
[3] Upon a trial to a jury, a verdict was returned in favor of plaintiff, and against both defendants, for the sum of $6,250. Judgment was entered in accordance with the verdict; and following unavailing motions for a new trial, defendants gave separate notices of appeal, and by subsequent steps have caused the case to be transferred to this court for our review. Although the copy of each notice of appeal was given a separate docket number as it was received in the office of the clerk, there is still but the single case in this court as there was in the court below. Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243; Waterman v. Waterman, Mo.App., 210 S.W.2d 723; Lincoln Trust Co. v. Mersman, Mo.App., 187 S.W.2d 50. *Page 572 
[4] The case was pleaded and submitted against defendant St. Louis Public Service Company upon the theory of res ipsa loquitur. Plaintiff was of course compelled to rely upon specific negligence as to defendant Cordia, the alternative charge being that he operated his automobile at an excessive, dangerous, and unreasonable rate of speed under the circumstances then and there existing, or that he failed and omitted to exercise the highest degree of care to keep and maintain a proper lookout for other vehicles approaching or entering the intersection, when by doing so he could have discovered the bus upon which plaintiff was riding in time thereafter to have stopped, swerved, or slackened the speed of his automobile, and thereby have avoided the collision.
[5] Defendant St. Louis Public Service Company assigns error to the court's refusal of its motion for a directed verdict. Defendant Cordia, on the other hand, takes the position that there was a case for the jury against both defendants. However he complains of certain of the instructions, as also does defendant St. Louis Public Service Company; and both defendants insist that the verdict was excessive.
[6] At the outset plaintiff challenges defendant St. Louis Public Service Company's right to be heard upon the question of the refusal of its motion for a directed verdict upon the theory that the motion itself neither specified the grounds for a ruling thereon, nor does the record indicate that the general motion was supplemented by oral argument of counsel so as to have advised the trial court of the specific grounds relied upon.
[7] It is true that the motion went no further than to suggest that under the law and the evidence plaintiff was not entitled to recover against defendant St. Louis Public Service Company, and did not present the specific ground now urged — that plaintiff's evidence had conclusively established the fact that her injury was solely and exclusively caused by the negligence of defendant Cordia, over whom defendant St. Louis Public Service Company had no control. But even if the general language of the motion is to be regarded as in and of itself insufficient to satisfy the requirements of the new code, Laws Mo. 1943, p. 389, sec. 122, Mo.R.S.A. § 847.122, it does not follow that this court is precluded from inquiring whether the motion was correctly ruled. The record discloses that both at the close of plaintiff's case and again at the close of the whole case the motion was "considered" before being overruled. That the court was fully apprised of such specific issue in the case is shown by the fact that it gave an instruction submitting the defense that defendant Cordia's negligence was the sole cause of the collision, and that the same was not due to any negligence on the part of defendant St. Louis Public Service Company. Furthermore, in the latter defendant's motion for a new trial, the question was once again directly brought to the court's attention. In this state of the record both reason and precedent would indicate that the question of whether plaintiff made a submissible case against defendant St. Louis Public Service Company is properly here for our review. Ashton v. Buchholz, Mo.Sup., 221 S.W.2d 496; Organaso v. Mellow, 356 Mo. 228, 201 S.W.2d 365; Rosebrough v. Montgomery Ward Co., Mo.App., 215 S.W.2d 295.
[8] There is no doubt that the doctrine of res ipsa loquitur applies to a situation where a passenger is injured as the result of a collision between two vehicles belonging to or under the control of the one carrier. However there is a difference of opinion in other jurisdictions as to whether a passenger who is injured in a collision between the vehicle of the carrier in which he is riding and another vehicle not under the carrier's control may have the benefit of the doctrine. 10 Am.Jur., Carriers, secs. 1634, 1635; 13 C.J.S., Carriers, § 764f(2). Our own state — very properly, we think — adheres to the rule that in such a case the doctrine applies to the carrier defendant, even though as to the other defendant outside the carrier defendant's control the plaintiff must of course rely upon proof of specific negligence. Hill v. St. Louis Public Service Co., Mo.Sup., *Page 573 221 S.W.2d 130; Zichler v. St. Louis Public Service Co., 332 Mo. 902,59 S.W.2d 654; Gibson v. Wells, Mo.App., 258 S.W. 1; Cecil v. Wells, 214 Mo.App. 193, 259 S.W. 844. The only qualification is that the plaintiff, in making out his case of specific negligence against the other defendant, must not go so far as to show, not only of what such other defendant's negligence consisted, but that it was in fact the sole cause of his injury. If his evidence discloses that he definitely knows the real or precise cause of the accident, there is no basis for invoking the doctrine of res ipsa loquitur, and if he shows that the other defendant's negligence was the sole cause of the accident, he could have no case against the carrier defendant on any theory of liability. Hill v. St. Louis Public Service Co., supra.
[9] The difficulty in this case springs from the fact that plaintiff in order to prove the specific negligence charged against defendant Cordia, elected to introduce the bus driver as her own witness. As might have been expected, the bus driver's testimony was somewhat calculated to exculpate himself while putting the blame for the collision upon defendant Cordia; and it is because of this fact that defendant St. Louis Public Service Company now contends that plaintiff's evidence showed defendant Cordia's negligence to have been the sole cause of her injury so as to have left no room for an inference of its own negligence under the doctrine of res ipsa loquitur. It follows, therefore, that the question for our consideration is whether plaintiff's proof did in fact make a sole cause case against defendant Cordia, or whether, on the contrary, it pointed to his negligence as a mere contributing factor, concurring with the negligence of defendant St. Louis Public Service Company to bring about the ultimate result. Moreover the question must be decided upon the strength of plaintiff's own evidence unaided by the evidence brought forward by defendant Cordia in his own defense, since defendant St. Louis Public Service Company stood on its motion for a directed verdict at the close of plaintiff's case, and thereby did nothing to waive its right to challenge the action of the court at that stage of the proceeding. Clay v. Owen, 338 Mo. 1061, 93 S.W.2d 914.
[10] The two witnesses testifying for plaintiff on the issue of liability were plaintiff herself, and one Markley, the driver of the bus upon which she was a passenger.
[11] The bus was traveling westwardly on Shenandoah Avenue, which crosses Eleventh Street on an upgrade which begins a block east of Eleventh Street and was described by Markley as "one of the steepest grades I believe any of our buses have to go up". On the other hand, Eleventh Street is level for at least one entire block to the north of Shenandoah Avenue. The traveled portion of each street is about 35 or 36 feet in width. Defendant Cordia was southbound on Eleventh Street, and his automobile collided with the north side of the bus at the rear door, or at a point approximately 22 feet back from the front of the bus and 11 feet forward from the rear.
[12] Plaintiff testified that she was sitting in a seat directly back of the exit door, or on the side of the bus where the collision occurred. In her estimation the bus had been traveling up the grade at a speed of 8 or 10 miles an hour, and continued on across Eleventh Street at approximately the same speed.
[13] As the bus was crossing Eleventh Street she turned her head for some reason and saw defendant Cordia's automobile approaching very rapidly on the west side of Eleventh Street, and then only 35 to 40 feet away. She subsequently estimated the speed of the automobile as having been from 35 to 50 miles an hour. She observed the automobile swerve slightly to the east, and realizing that the two vehicles were about to collide, she attempted to turn her body so as to avoid any flying glass. Before she had time to turn completely around, the automobile crashed into the side of the bus, throwing her diagonally across the aisle and against one of the upright metal rods which extend from the floor to the top of the bus.
[14] On further examination plaintiff testified that when she first saw the approaching automobile, the front of the bus had reached *Page 574 
the west or furthermost curb line of Eleventh Street, so that she, at her position directly back of the exist door, would have been perhaps some 10 feet out in the intersection, or, as she herself put it, something like one-third of the way across the street. She had heard no horn before the bus entered the intersection, but having been preoccupied with her thoughts, she did not pretend to know whether the driver had sounded his horn or not. The only thing that had attracted her attention to the speed of the bus was that it "seemed to be very slow".
[15] As we understand the point in issue, there is no suggestion that plaintiff herself, by her own personal testimony, showed definitely and positively that defendant Cordia's negligence was the sole cause of the collision and her resulting injury. On the contrary, it seems to be the contention that it was her whole evidence, including, in particular, the testimony of her witness Markley, the bus driver, that made out a case of sole cause against defendant Cordia so as to have exculpated defendant St. Louis Public Service Company from all blame, and thereby have required the court to direct a verdict in favor of such defendant. It must of course be conceded that even though Markley was an adverse witness as regards the controversy between plaintiff and defendant St. Louis Public Service Company, she was none the less bound by his testimony, having made him her witness, save only as she had other facts and circumstances in her case contradictory of whatever testimony he gave adversely to her claim. Klotsch v. P. F. Collier Son Corporation, 349 Mo. 40, 159 S.W.2d 589; Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663.
[16] Markley testified that he was driving about 7 feet out from the curb of Shenandoah Avenue, and that he approached the intersection at a speed of about 8 miles an hour, which was reduced to 5 miles an hour as he crossed Eleventh Street. He stated positively that he did not see defendant Cordia's oncoming automobile until the front of his bus was in the very middle of the intersection, where he "could see down the center of the street up Eleventh Street". In other words, he had admittedly traveled from 17 to 18 feet out into the intersection before he saw the automobile, which was then about 90 feet, or a quarter of a block, to the north on Eleventh Street. However he insisted that after entering Eleventh Street he had looked to the north before his bus reached the center of the street where he first became aware of defendant Cordia's approach. It was not so much that he recalled precisely that he had looked on this particular occasion as that he was accustomed to keep a lookout going through any intersection.
[17] Apparently the location is such that one driving west on Shenandoah Avenue can have but little view to the north until actually entering Eleventh Street. A brick house stands on the northeast corner flush with the sidewalk line, and while there is a space of 8 or 9 feet between the wall of the building and the east curb line of Eleventh Street, one's view to the north is interfered with by some sycamore trees located along the sidewalk. There was no denial that upon reaching the curb line itself, one can see north on Eleventh Street for a whole block if there are no parked automobiles to obstruct his view, but whether there were any such automobiles parked along the street on this occasion, Markley did not recall.
[18] Markley testified further that when he first observed defendant Cordia's automobile, it was somewhat across the center line on the east or left-hand side of the street, and was traveling at a speed which he estimated at 40 miles an hour. He did not see that its course was ever changed. As a matter of fact, he confined all his efforts to getting his bus out of the path of the oncoming car, and he stepped on the accelerator with all the force he possessed. However the bus had a "poor pick-up", and the collision occurred notwithstanding the efforts made to avoid it.
[19] As we have already pointed out, even defendant Cordia himself admits that plaintiff made a submissible case of the specific negligence charged against him. However we do not read plaintiff's evidence as conclusively establishing that defendant *Page 575 
Cordia's negligence was the sole cause of the accident. What we mean is that no such conclusion appeared as a matter of law, but was only to be arrived at as one of fact, if the jury were so impressed by the evidence.
[20] While plaintiff's evidence undoubtedly tended to show certain omissions properly chargeable to defendant St. Louis Public Service Company, it did not show the same with such particularity and completeness that they might have been submitted as charges of specific negligence. Hill v. St. Louis Public Service Co., supra.
[21] It was of course not enough for plaintiff merely to show that she had been injured while a passenger on the bus, but in order to establish a basis for an inference of some negligence on the part of defendant St. Louis Public Service Company, it was essential that she show that the unusual occurrence giving rise to her injury had been something related to such defendant and under its management and control. Belding v. St. Louis Public Service Co., Mo.Sup., 215 S.W.2d 506; Pointer v. Mountain Railway Construction Co., 269 Mo. 104, 120, 189 S.W. 805, L.R.A. 1917B, 1091.
[22] One of such matters was the fact appearing from Markley's own testimony that even though he had a clear view to the north up Eleventh Street after passing the east curb line or at most after passing any line of automobiles that may have been parked along the street, he did not discover the oncoming automobile until the front of his bus had reached the very center of the intersection. This was a matter not made clear by plaintiff's evidence, and certainly the subject of explanation. But there is still another matter of equal concern which likewise appeared from Markley's own testimony. This was the fact that the bus was equipped with one of the oldest types of Diesel motors that the company owned, and had a "slower acceleration than the normal bus". Was this fact due to some negligence in the maintenance of the equipment, or could the inadequacy of the motor have been explained? Under all the facts and circumstances plaintiff's evidence disclosed a situation where defendant Cordia's negligence might properly have been found to have been a mere contributing factor, concurring with some negligence on the part of defendant St. Louis Public Service Company, which, even though plaintiff's evidence may have tended to show it, was not revealed with such definiteness and preciseness as to have denied plaintiff the right to submit her case against defendant St. Louis Public Service Company under the doctrine of res ipsa loquitur. Defendant St. Louis Public Service Company's motion for a directed verdict was properly overruled.
[23] This holding likewise disposes of defendant St. Louis Public Service Company's complaint about the giving of instruction No. 2 in so far as the complaint is directed to the submission of the case upon the res ipsa loquitur theory. However there is the further objection that the instruction, while generally adhering to an approved form, was rendered erroneous by the insertion of the clause, "if you believe that you should".
[24] After hypothesizing certain basic facts, including the relationship of passenger and carrier, the collision, and plaintiff's injury, the instruction told the jury that such facts were sufficient circumstantial evidence to warrant a finding that defendant St. Louis Public Service Company was negligent, and that they might so find, "if you believe that you should", unless they found from other facts and circumstances in evidence that the collision was not due in whole or in part to such defendant's negligence.
[25] The contention is that the language complained of conferred a roving commission on the jury to find defendant St. Louis Public Service Company negligent, not upon the determination of the existence of certain facts or upon the basis of any stated rational considerations, but only if the jury believed that they should, thereby substituting for appropriate judicial standards what the particular jury might believe should be done in accordance with their own personal standards of conduct or prejudices.
[26] It has been pointed out that the rule of res ipsa loquitur merely means that the facts of an occurrence may warrant an inference of negligence, but will not *Page 576 
compel it; that while such circumstantial evidence of negligence is to be weighed, it is not necessarily to be accepted as sufficient; and that such evidence merely makes a case to be decided by the jury, and does not in any sense forestall the verdict. Harke v. Haase, 335 Mo. 1104,75 S.W.2d 1001.
[27] What other conceivable purpose did the clause in question serve than to embody in a few words what we have said in the preceding paragraph? In determining its effect, the clause must not be isolated from the context in which it appears. Having been told that certain basic facts were sufficient circumstantial evidence to warrant a finding that defendant St. Louis Public Service Company had been negligent, the jury were then informed that they might so find, if they believed that they should, which merely meant that after all it was for them to weigh the evidence and to determine from their consideration of it whether such defendant had in fact been negligent. The inclusion of the particular clause did not in any sense relieve the jury from the necessity of following all the other directions of the instruction, and so far as we can see it actually added nothing to the instruction that would not as well have been implied if the clause had been omitted.
[28] Defendant Cordia first assigns error to the giving of instruction No. 1, which told the jury that under the law of this state, the operator of a motor vehicle on the public streets and highways of this state is required to exercise the highest degree of care, that is, such care as would be exercised by a very careful and prudent person under the same or similar circumstances, and that a failure to exercise such care would constitute negligence as that term was used in the instructions.
[29] There could be no pretense that the instruction contained an incorrect statement of the law with respect to the duty imposed upon the operator of a motor vehicle while operating the same upon the public streets and highways of this state. Sec. 8383, R.S.Mo. 1939, Mo.R.S.A. § 8383. On the contrary, what defendant Cordia professes to find fault with is that the instruction, even though abstractly correct, was not properly tied in and connected up with the other instructions, and therefore became confusing and misleading when read with the other instructions, and particularly with instruction No. 6, so as to have given the jury a roving commission to find him guilty of negligence in any respect.
[30] Whether or not instruction No. 6 was erroneous will be considered in a subsequent portion of the opinion in answer to an attack upon it by both defendants. As for instruction No. 1, suffice it to say that it was by its own terms directly connected with the other instructions. After announcing the requirement for the exercise of the highest degree of care, it concluded with the specific direction that a failure to exercise such care would constitute negligence "as that term is used in these instructions". It is both common practice and good practice in negligence actions to give a separate instruction abstractly defining what shall constitute negligence on the part of the one charged with it. The only thing necessary is that such an instruction shall then be accompanied and followed by other instructions properly applying the law to the facts. Stewart v. St. Louis Public Service Co., Mo.App., 75 S.W.2d 634. This course was pursued in the present instance, and there is no error to be predicated upon the giving of instruction No. 1.
[31] Defendant Cordia next complains of instruction No. 3, which submitted the defense of sole cause at the instance and request of defendant St. Louis Public Service Company.
[32] This instruction told the jury that if they found that defendant Cordia saw or should have seen the bus crossing Eleventh Street, and knew or should have known that there was imminent danger of a collision in time to have stopped his automobile, but that he failed to do so, and that his act was negligent and was the sole cause of the collision, and that defendant St. Louis Public Service Company was not guilty of any negligence as submitted in the other instructions, then plaintiff was not entitled to recover against defendant St. Louis Public Service Company, and the verdict should be in favor of such defendant. *Page 577 
[33] Even though the instruction did not direct a verdict against defendant Cordia, he takes the position that it was none the less calculated to affect the question of his liability to plaintiff so as to be a proper subject for his complaint. His whole objection amounts to this — that the instruction injected improper elements into the case, and was designed to serve the purpose of enabling defendant St. Louis Public Service Company to "unload" its own obligation upon him. However the truth of the matter is that it is now of no importance whether the instruction was open to any of the criticisms which defendant Cordia levels at it. The jury did not find that his negligence was the sole cause of the collision, but instead returned a verdict against both defendants, so that in any event he was not prejudiced by it. Mahany v. Kansas City Rys. Co., Mo.Sup., 254 S.W. 16, 21, 29 A.L.R. 817.
[34] Both defendants complain at length about the giving of instruction No. 6, which read as follows:
[35] "With reference to the charges of negligence against both defendants in this case, you are instructed that if from the evidence and the instructions of the Court you find that the negligence, if any, of the defendant, St. Louis Public Service Company, no matter how great, and the negligence, if any, of the defendant, William Edward Cordia, no matter how great, directly concurred, combined and contributed to cause the plaintiff to sustain injury, then it would be your duty to return a verdict in favor of the plaintiff against both defendants, because if both defendants were negligent in any respect submitted to you in these instructions, and if their negligence directly contributed to cause injury to plaintiff, then neither defendant, even if less negligent than the other defendant, could make use of the concurring negligence of such other defendant to defeat the claim of the plaintiff against both defendants.
[36] "In other words, it is no defense to one defendant that the negligence of some other defendant concurred with his negligence to cause injury to plaintiff, and before you can render a verdict in favor of any one defendant, you must find and believe from the evidence that said defendant was not negligent or that his negligence, if any, did not contribute to cause plaintiff's injury."
[37] Defendant St. Louis Public Service Company complains that the instruction directed a verdict against it in disregard of any question of proximate causation, and that if it did not in so many words specifically shift the burden of proof to each defendant, it was at least so far inconsistent with the two burden of proof instructions as to have prevented the jury from having a rational concept as to which party did have the burden of proof.
[38] Defendant Cordia insists that the instruction, when read with instruction No. 1, gave the jury a roving commission to find any act on his part, which they might have found to constitute negligence under instruction No. 1, to have been a concurring factor in causing the accident; that the instruction was in conflict with instruction No. 3, which submitted the question of his sole negligence as a defense for defendant St. Louis Public Service Company; that the instruction gave the jury no help in determining the question of proximate causation; and that to the lay mind it was calculated to place the burden upon each defendant to negative his or its negligence, and was thereby in conflict with the burden of proof instructions.
[39] The instruction in question was concededly taken almost verbatim from an instruction considered in Matthews v. Mound City Cab Co., supra, which instruction was in turn based upon one which had been before the court in Hieken v. Eichhorn, Mo. App., 159 S.W.2d 715.
[40] It was not the purpose of the instruction to direct a plaintiff's verdict in the sense in which such expression is ordinarily used. The matter of directing a plaintiff's verdict had previously been taken care of by instructions Nos. 2 and 4. The obvious purpose of instruction No. 6 was to charge the jury with respect to the significance of concurring negligence in the event they found that the negligence of both defendants had concurred to produce the injury.
[41] It is also a mistake to say that the instruction disregarded the question of *Page 578 
proximate causation. By express terms it dealt only with such negligence on the part of defendants as had "directly" concurred or contributed to cause the accident. Nor did it give the jury a roving commission to convict defendant Cordia of negligence upon the finding of any act other than those upon which plaintiff had relied for her recovery. On the contrary, in informing the jury of their duty to return a verdict against both defendants if they found them guilty of concurring negligence, the instruction distinctly limited the jury to the question of whether both defendants were negligent in any respect "submitted to you in these instructions". In other words, while the case was submitted against defendant St. Louis Public Service Company upon general negligence, the only negligence that the jury were authorized to consider against defendant Cordia was excessive speed and failure to keep a lookout as submitted by instruction No. 4. There was obviously no conflict with instruction No. 3, since if the jury found that defendant Cordia's negligence had been the sole cause of the collision, and that defendant St. Louis Public Service Company had not been guilty of any negligence whatever, there could have been no question of concurring negligence for the jury to consider.
[42] The only question which might have been one for serious concern is whether the instruction, and particularly its last paragraph, effectually relieved plaintiff of the burden of proof, and instead imposed the burden upon each defendant to convince the jury that he or it was not negligent, or that his or its negligence, if any, did not contribute to cause plaintiff's injury. However this precise point was ruled adversely to defendants' complaint, first in Hieken v. Eichhorn, supra, and again in Matthews v. Mound City Cab Co., supra.
[43] We are still of the view that our ruling in both of these cases was correct. The second paragraph was of course to be read along with the first paragraph of the instruction, which had told the jury that if they found that the negligence of both defendants, irrespective of the quantum of negligence of each, had concurred to produce the injury, they should return a verdict against both defendants, since neither defendant, even if less negligent than the other, could make use of the other's concurring negligence to defeat plaintiff's claim against both defendants. The instruction then followed with the explanatory matter directly connected with what had gone before — that it was no defense to one defendant that the negligence of his co-defendant had concurred with his own negligence to cause the injury, and that before the jury could render a verdict in favor of any one defendant, they must either find that such defendant had not been negligent, or that his negligence, if any, had not contributed to cause the injury. Read in its context, and along with the other instructions, the jury could hardly have misunderstood the language in question to relate to the subject of the burden of proof on plaintiff's cause of action, which was plainly and specifically covered by instructions Nos. 7 and 8. There is no error to be predicated upon the giving of instruction No. 6.
[44] Finally both defendants argue with much insistence that the verdict of $6,250 was excessive.
[45] Plaintiff was fifty-four years of age at the time of her injury in July, 1947. It will be recalled that as the result of the collision she was thrown across the bus, and caused to strike against one of the upright metal rods extending from the floor to the roof. The force of the impact was enough to render her unconscious; and when she came to her senses, she found herself back in her seat to which some one had evidently assisted her. Her face and entire right side were severely bruised, and several teeth were loosened. Fortunately she sustained no broken bones; and so far as the injury to the soft tissues was concerned, she had enjoyed a normal recovery except that at the time of the trial in December, 1948, seventeen months after the accident, her right arm was still swollen over and above its size at the time of the accident, and she had developed varicose veins below the right knee, which she had not had before the accident. The day after the accident she developed nausea and *Page 579 
dysentery, which continuing for four weeks, was attributable to nervous shock, and brought on a substantial loss in weight from which her recovery was slow. She was confined to her bed and at her home for approximately six weeks, and was still under her doctor's care at the time of the hearing in the court below.
[46] However the most serious consequences of the injury was a functional nervous disorder which manifested itself by severe headaches, insomnia, and the like, and had resulted in elevating plaintiff's blood pressure, which, although it had been substantially reduced by the doctor's treatment, was still abnormally high at the time of the trial. This was accompanied by dizziness, and in the nature of things put an undue strain upon the heart and blood vessels. Some years before the accident plaintiff had undergone a radical operation for the removal of a malignant growth, and while the effect of such an operation had been to leave her nervous and apprehensive, her general condition had been satisfactory to her doctor before the accident, and the nervous condition which she exhibited after the accident was decidedly different from that which had existed before. Due to the improvement that had been shown in both her nervous condition and hypertension, the doctor was inclined to think that she would eventually return to a normal level, but expected her to be under his care for another three or four years.
[47] It may be conceded that the verdict was most substantial for the character of injuries that plaintiff had sustained. However a verdict is not to be interfered with on appeal unless it so offends against all sense of right as to shock the conscience of the court. Flynn v. Corich, Mo.App., 53 S.W.2d 1103; Lanasa v. Downey, Mo.App., 201 S.W.2d 179. In other words, the amount of damages to be awarded in a given case is a matter within the special province of the jury to determine; and while the size of a verdict is a proper subject for appellate review, the verdict is not to be reduced unless the appellate court can say that its excessiveness appears as a matter of law, that is, that it is clearly and unmistakably for an amount in excess of the very most that the proof of damages would sustain. The situation is different with the trial court, which has the power to weigh the evidence in regard to the nature and extent of the plaintiff's injuries; and in recognition of the significance of such a check upon the jury, the appellate court accords great respect to what would seem to have been the viewpoint of the trial court upon the matter. The question in this case was of course specifically brought to the trial court's attention in each defendant's motion for a new trial, and the court refused to grant relief. Under all the facts and circumstances of the case, it does not appear that this court would be warranted in disturbing the verdict as returned.
[48] It follows that the judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.