CLARA ROTHWEILER, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, and WILLIAM EDWARD CORDIA, Appellants, No. 41872—234 S. W. (2d) 552.

Court en Banc, November 13, 1950.
Rehearing Denied, December 11, 1950.

260

*Walther, Hecker, Walther & Barnard* and *Harold F. Hecker* for appellant William Edward Cordia.

*Salkey & Jones, Carroll J. Donohue* for appellant St. Louis Public Service Company.

262

*Evans & Dixon, William W. Evans* and *John F. Evans* for respondent.

[552] LEEDY, J.—Clara Rothweiler recovered judgment for $6,250 against St. Louis Public Service [553] Company (sometimes

hereinafter referred to as the carrier) and William Edward Cordia for injuries sustained by her in a collision between a motor bus of the former on which she was a passenger and Cordia's automobile. The St. Louis Court of Appeals affirmed the judgment (see 224 S. W. 2d 569), and on application · of both defendants, this court ordered the cause transferred here. The primary purpose of the court in making such order (although not indicated of record) was to review the holding by which approval was given to instruction No. 6, which was claimed to shift the burden of proof. The supplemental briefs on the present submission are directed to particular objections urged against the opinion of the Court of Appeals. We are in accord with and affirm that court's conclusions except as to the propriety of the instruction mentioned. Reference is made to that opinion for a more detailed discussion of the facts and authorities.

The case was pleaded and submitted as to the carrier under the res ipsa loquitur theory, and as to Cordia upon specific negligence— permissible practice in collision cases (where warranted by the pleadings and the evidence), even though one of the vehicles be not under the control of the carrier. Hill v. St. Louis Public Service Co., 359 Mo. 220, 221 S. W. 2d 130; Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S. W. 2d 654; Gibson v. Wells, (Mo. App.) 258 S. W. 1; Cecil v. Wells, 214 Mo. App. 193, 259 S. W. 844.

The collision occurred on the afternoon of July 21, 1947, at the intersection of Eleventh and Shenandoah, in the City of St. Louis. Eleventh runs north and south; Shenandoah, east and west. Both streets are approximately the same width—35 or 36 feet from curb to curb. The bus, proceeding westwardly on Shenandoah, was crossing the intersection. Cordia, southbound on Eleventh, drove his Oldsmobile into the right or north side of the bus at the rear door, or at a point 22 feet back from the front end and 11 feet forward from the rear.

The carrier does not contend that plaintiff initially failed to make a submissible res ipsa case against it, but rather that the inference embodied in that doctrine became inapplicable in the light of the particularity with which her evidence developed the facts and circumstances surrounding the casualty. Her personal testimony in that connection went no further than to show that she was seated toward the rear and on the right or north side of the bus; that as it started across Eleventh Street she turned her head, and saw Cordia's automobile approaching the intersection on the west side of Eleventh Street, 35 or 40 feet away, and "coming very fast." It swerved, and she, knowing it was going to hit the bus, turned around in her seat to avoid any flying glass. The collision occurred, and she was thrown "across the aisle diagonally, up against the post."

Res ipsa loquitur did not apply in favor of plaintiff against Cordia, the individual defendant, and so in order to hold him it became

incumbent upon her to prove one or more of her charges of specific negligence against him. She accordingly took the rather bold course of calling the bus driver as a witness in her behalf, and elicited from him, in some detail, the facts touching the scene of the accident and matters of distance, position, speed, movement of the vehicles, etc. It is upon the basis of Markley's testimony that the carrier contends Cordia's negligence was shown to be the sole cause of the collision. The following is a summary of his testimony in so far as pertinent to that issue: Markley was driving with the north side of the bus about 7 feet out or away from the north curb line of Shenandoah, and he continued in this position as he started across Eleventh. He did not see Cordia's car (an Oldsmobile) until the front end of the bus was in the middle of the intersection, where he "could see down the center of the street up Eleventh Street." At that time the automobile was approximately 90 feet away, and was more toward the east curb of Eleventh than the west—"he was somewhat over the center line, in other words." Markley estimated the speed of the automobile at 40 [554] miles an hour. After he saw it coming, he said he paid more attention to his driving than anything; he tried to get out of its way and consequently didn't see the automobile again until the collision. The impact was sufficient to cause the automobile to bounce back about 10 feet from the bus. At the time of collision, the rear door of the bus was in the center of the intersection, and the front end of the automobile was 4 or 5 feet out into Shenandoah. On cross-examination by the carrier's counsel, he testified that as he approached Eleventh Street he was going about 8 miles an hour, which he reduced to 5 miles as he started across the intersection. He identified a photograph of the bus, and also stated that when he first saw the automobile the front of the bus was about the center of Eleventh Street, and the automobile was then 90 feet away. He did not see the automobile swerve. On cross-examination by Cordia's counsel, he reiterated some of his former statements, and said that he blew his horn before entering the intersection; that after seeing Cordia's car he tried to get across the intersection before Cordia got there; that the motor in the bus was a diesel motor that was one of the oldest types that the company had, and on that particular diesel it had a slow pickup going up the hill; at the northeast corner of the intersection was a brick house which was flush with the sidewalk line; between the sidewalk and the curb was a distance of 8 or 9 feet on both streets; from the building line one could see north on Eleventh Street for a distance of 75 feet if there were no cars parked along the curb; that Eleventh Street is level to the north of Shenandoah, and the closer to the curb line, the greater distance one could see up Eleventh Street. The witness was reluctant to admit that from the curb line one could see a distance of one block north on Eleventh; that when he got to the curb he looked to see if there was any traffic coming his way,

and he saw none until he got to the middle of Eleventh Street; that between the time he got to the curb and the middle of the street, he looked again; that he could not say offhand how many times he looked, but it was his practice to watch all the time while going through an intersection. At any rate, he did not see the car until he was halfway across the street. He tried to get the bus out of the way—the first time he saw the car he "stepped on it and went across from there on just as fast as he could." He stated that the bus had a slower acceleration than the normal bus.

Neither the reason for the bus driver's failure to see the oncoming automobile until the bus was in the middle of the intersection, notwithstanding an unobstructed view up Eleventh Street, nor the reason for the inadequacy of the older type diesel and its slower than normal pickup with which the bus was equipped were shown by the evidence introduced in plaintiff's behalf. These matters were left unexplained. Consequently, it cannot be said that the evidence conclusively repels any inference of negligence on the part of the carrier in the maintenance and operation of the bus. Cordia himself admits plaintiff made a submissible case of certain of the specifications of negligence charged against him, but it does not appear, as a matter of law, that his negligence was the sole and exclusive cause of the collision, and hence the court committed no error in overruling the carrier's motion for a directed verdict.

The carrier will not be heard to say plaintiff's case was "devoid of evidence of specific negligence on the part of this defendant," and then insist, as its brief does, that the case should have been submitted as to it, if at all, as a specific negligence case. Consequently, we need not discuss the applicable principles had the evidence shown specific negligence on the part of the carrier.

The Court of Appeals treated the other assignments exhaustively, and, as above indicated, we are in accord with its views except as to the propriety of one instruction, No. 6. Both defendants vigorously assailed that instruction in the Court of Appeals, and in their supplemental briefs in this court. It reads as follows:

"With reference to the charges of negligence against both defendants in this case, you are instructed that if from the evidence and the instructions of the Court you [555] find that the negligence, if any, of the defendant, St. Louis Public Service Company, no matter how great, and the negligence, if any, of the defendant, William Edward Cordia, no matter how great, directly concurred, combined and contributed to cause the plaintiff to sustain injury, then it would be your duty to return a verdict in favor of the plaintiff against both defendants, because if both defendants were negligent in any respect submitted to you in these instructions, and if their negligence directly contributed to cause injury to plaintiff, then neither defendant, even if less negligent than the other defendant, could make use of the

concurring negligence of such other defendant to defeat the claim of the plaintiff against both defendants.

"In other words, it is no defense to one defendant that the negligence of some other defendant concurred with his negligence to cause injury to plaintiff, and before you can render a verdict in favor of any one defendant, you must find and believe from the evidence that said defendant was not negligent or that his negligence, if any, did not contribute to cause plaintiff's injury."

Substantially the same instruction has been approved by the St. Louis Court of Appeals in two cases, Matthews v. Mound City Cab Co., (Mo. App.) 205 S. W. 2d 243, and Hieken v. Eichhorn, (Mo. App.) 159 S. W. 2d 715.

We think the second paragraph is prejudicially erroneous because of the likelihood of certain of its language being taken literally by a jury of laymen. The paragraph seemingly undertakes to state conversely, and more briefly, the proposition submitted in the first paragraph, as witness the phrase, "In other words." The first clause of the second paragraph is unobjectionable, but the remaining portion is mischievous. To say, as this portion does, that before a verdict can be rendered in favor of any one defendant, it must be found from the evidence that such defendant was not negligent, or that his negligence, if any, did not contribute to cause plaintiff's injuries, is to misstate the law. The burden is the other way around. As a condition to a plaintiff's verdict, it must be found from the evidence that defendant was negligent, and that such negligence contributed to cause the injury. It is true that by other instructions the jury was told that the burden was upon plaintiff to prove her case by the preponderance or greater weight of the evidence, and that she was injured through defendants' negligence. Even so, we think a jury would have difficulty in reconciling these declarations with the second paragraph of No. 6, and that the latter should not have been given. Moreover, we take occasion to say that no useful or fair purpose is served by the two references in the first paragraph to the negligence of defendants "no matter how great." The proposition sought to be submitted is not affected in the least by relative degrees of care as between the defendants. The question is whether both were negligent, and whether the negligence of both concurred to cause the injury.

The judgment should be reversed, and the cause remanded. It is so ordered. *Tipton, Ellison, JJ.*, and *Hyde, C. J.*, concur; *Conkling, J.*, dissents in separate opinion filed; *Dalton, J.*, dissents; *Hollingsworth, J.*, not sitting because not a member of court when cause was submitted.

CONKLING, J. (dissenting).—For reasons hereinafter referred to I respectfully dissent from the conclusion of that portion of the principal opinion which considers the propriety of instruction 6,

given at the request of plaintiff, and which rules that the trial court erred in giving that instruction.

The reasons for my dissent are fully stated by the St. Louis Court of Appeals in its consideration of the last paragraph of this instruction (224 S. W. (2d) 1. c. 578), and in the opinion of that court in Matthews [556] v. Mound City Cab Company, 205 S. W. (2d) 243, 250, 251. It is my view that the Court of Appeals in those cases correctly ruled the question. I would affirm the judgment from which the instant appeal was taken.