GUSTAV ZICHLER v. ST. LOUIS PUBLIC SERVICE COMPANY. Appellant.—
59 S. W. (2d) 654.

Division One, April 20, 1933.

*T. E. Francis, B. G. Carpenter* and *Allen, Moser & Marsalek* for appellant.

*Mark D. Eagleton, John F. Clancy* and *Frank P. Aschemeyer* **for** respondent.

STURGIS, C.—This is a personal injury suit in which plaintiff, a passenger on a street car when injured, recovered a judgment in a jury trial in the sum of fifteen thousand dollars against the defendant street car company, appellant, for injuries received in and by reason of a collision of a street car in which he was riding with a large truck owned and operated by the A. Morgan Hauling & Express Company, called herein the Morgan Company. That company was also made a party defendant, but it won out before the jury. The collision occurred on January 19, 1927, on Eleventh Street, a narrow north and south street in St. Louis, near its intersection with Buchanan Street. At the time of the collision the street car in which plaintiff was a passenger was going north on Eleventh Street on its track near the center of such street, and the Morgan Company's truck was going south astraddle of the west rail of this track. In attempting to pass each other the rear ends of the two vehicles collided or interlocked, with the result that the rear vestibule of the street car was torn nearly loose from the rest of the car. The collision was of sufficient violence that the street car lights went out and plaintiff, who was sitting on a seat near the rear end of the street car, was thrown from his seat, striking his hip on the floor and the small of his back against the edge of the seat.

The petition charges that "said collision and injuries directly and proximately resulted from the negligence and carelessness of defendant street car company, its agents and servants, and also directly and proximately resulted from the negligence and carelessness of the defendant A. Morgan Hauling & Express Company, acting by and through its agent, servant and chauffeur, in the following respects, to-wit:" The petition then states seven specific grounds or acts of negligence on the part of the Morgan Company, relating to the operation of its truck in bringing about the collision. No specific act or ground of negligence is stated on the part of the defendant street car company. The only charge of negligence against it is the general charge just stated. The grounds of negligence charged against the

Morgan Company are (1) operating the truck at an excessive rate of speed; (2) failure to stop or slacken the speed of the truck or swerve it to one side so as to avoid the collision; (3) failure to drive the truck as near as practicable to the curb on the right hand (west) side of the street; (4) in trying to pass the street car too close to it; (5) in negligently signaling the street car to proceed past the truck when the truck driver could reasonably see the danger of a collision; (6) in that the truck driver in passing the street car negligently swerved his truck toward and into collision with the rear end of the street car; and (7) violation by the truck driver of the humanitarian rule. These are all acts of negligence on the part of the Morgan Company and its truck driver and are distinctly so averred.

The defendant street car company answered by general denial and did not demur or attack the petition by motion to require the same to be made more specific and definite in the allegations of negligence as to it.

Aside from proving the nature and extent of his injuries, the plaintiff took the rather bold course of proving his case by calling as his witnesses both the motorman of the street car and the driver of the truck. As each of these had to admit the collision of the two vehicles, the plaintiff apparently proceeded on the theory that each would put the blame on the other and thus he would make a case against both and would certainly get a verdict against one. And there is some reason for thinking that when two vehicles like a street car and a large truck meet each other traveling in opposite directions on a street wide enough for both, and each sees and knows of the other, yet they collide, either something very extraordinary has happened or the operators of one or both have been guilty of negligence. This at least is the viewpoint of an innocent and injured passenger.

Without going into lengthy detail of the evidence, it will suffice to say that the operator of each car saw and observed the other when they were some two hundred fifty feet apart and they were then each going about twelve to fifteen miles per hour. Each claims to have slowed down to some extent, though the witnesses differ as to the extent. As the two cars neared each other, the truck turned to the right, toward the west curb, and left the street car track, but at this point there is a sharp conflict in the evidence. The truck driver claims that he went to the right as far as he well could and that he *stopped* with his right front wheel against the curb and his right hind wheel only slightly further out in the street; that he remained standing while the street car approached at least till the front of the street car, it being some forty feet long, passed the front of his truck. In this he is corroborated by two persons who followed in an automobile close behind his truck and also turned to the curb and stopped behind this truck. On the other hand, the motorman of the street

car says the truck kept on going, that the front end of the street car cleared the front end of the truck by some eight inches and would have cleared the entire truck if it had kept straight on, but that the truck driver turned or swerved his truck toward the rear end of the street car, causing the rear end of the truck to hook into the mechanism of the rear end of the street car. There is evidence to the effect that each of these drivers, when the two front ends of the cars cleared each other, thinking perhaps that there was sufficient space for the rear ends to clear also, turned on the power and increased the speed so that when the rear ends collided it was with considerable force. The motorman also testified that when the front ends of the two cars were passing or about to pass each other, the truck driver signaled the motorman to go on and called out "all right" or words to that effect. The truck driver stoutly denied this. The sum of the matter is that the defendant street car company relied, as a defense to it, on the same negligence of the truck driver as charged by plaintiff against the Morgan Company, to-wit, that the truck driver "negligently and carelessly swerved said truck so as to collide with said street car while said street car was in the act of passing said truck." The only instruction asked by defendant street car company, other than its demurrer to the evidence, was given by the court and reads:

"The court instructs the jury that if you find and believe from the evidence that at the time the motorman operating the street car started to pass the truck of the defendant A. Morgan Hauling & Express Company, Inc., there was a sufficient clearance for the car and truck to pass each other had the truck remained in its then position, but that thereafter, after the main body of the street car has passed the main body of the truck said truck was caused to run into and collide with the rear vestibule of the street car, and that such act on the part of the driver of the truck was the sole cause of the accident and said collision was not due to any negligence or carelessness on the part of the motorman operating the said street car, then your verdict must be in favor of the defendant St. Louis Public Service Company."

The jury found against defendant on its only defense as stated in this instruction and against the facts there hypothecated. The evidence was conflicting and such is the province of the jury. The jury might well have found against both defendants, but plaintiff, who alone can complain of that, does not do so.

The defendant's principal assignment of error in this court is that the trial court improperly tried the case on the theory of *res ipsa loquitur*. As we understand defendant, it concedes that this rule generally applies to suits for personal injuries by a passenger against a carrier, such as is this case. Such cases fall under the rule

of *res ipsa loquitur*, which is to the effect that where the thing or instrumentality which causes the injury complained of is shown to be under the management and control of the defendant and his servants, and the accident is such that in the ordinary and normal condition of things it would not happen if those who have its management and control use proper care, then the accident itself and its attendant circumstances afford reasonable evidence from which the jury, in the absence of reasonable explanation by defendant exculpating him, may infer and find that the accident arose from want of due care. 45 Corpus Juris, page 1193, section 768, and Missouri cases there cited. Defendant, as we understand, concedes that if this case had been brought against the street car company only, this doctrine would apply, but defendant argues that as the action is against two joint tort-feasors, as to only one of which the doctrine applies, and not to the other, the Morgan Company, then the doctrine cannot be made to apply to either defendant. Defendant states its contention in this forceful language:

"But, in view of the fact that the petition charges that the collision was between the street car and another vehicle operating in the public street—an instrumentality not under the management and control of the defendant—and makes specific allegations of negligence as to the defendant operating such other instrumentality, disclosing the specific acts of negligence said to have caused plaintiff's injury, and which, in some particulars at least, are utterly inconsistent with any negligence on the part of the defendant, we respectfully contend that plaintiff is precluded from relying upon the *res ipsa loquitur* rule."

The defendant then argues that the petition does not state facts sufficient to constitute a cause of action against this defendant because no *facts* constituting specific negligence as to it are stated, and the doctrine of *res ipsa loquitur* cannot apply to this defendant because another defendant is sued along with it, as to whom this doctrine does not apply and as to whom specific acts of negligence are averred. This argument is made in the face of the fact that this defendant did not attack the petition by demurrer or otherwise. The fallacy of this argument lies in the fact that the rule of *res ipsa loquitur* is a rule of evidence and not of pleading, at least to the extent of judging the sufficiency of the petition to state a cause of action.

In 45 Corpus Juris, section 769, page 1196, this is said: "The phrase '*res ipsa loquitur*,' which literally means 'the thing speaks for itself,' is a term used in a limited class of negligence cases referring to the method of proof of general negligence as distinct from proof of specific negligence. This doctrine . . . is a rule of evidence peculiar to the law of negligence and is an exception, or perhaps more

accurately a qualification, of the general rule that negligence is not to be presumed but must be affirmatively proved. Thus, while negligence of defendant, as previously stated, cannot be inferred or presumed from the mere happening of an accident, the law by virtue of this doctrine recognizes that an injury may occur under such circumstances that it may be sufficient to establish prima facie the fact of negligence without further or direct proof thereof.''

In Meyer v. City of Independence (Mo.), 189 S. W. 816, 822, this court, speaking of the doctrine of *res ipsa loquitur*, said: ''It is a rule of evidence arising in some cases to the height of a presumption, and always, in cases to which it applies, entitling the party entitled to its benefit to go to the jury on the question of negligence.'' Such is the reasoning of the court in Roscoe v. Metropolitan St. Ry. Co., 202 Mo. 576, 101 S. W. 32.

The sufficiency of a petition to state a cause of action so as to be sufficient to support a judgment, at least after verdict, is to be determined independently of whether or not the cause of action is one to which the doctrine of *res ipsa loquitur* applies as a rule of evidence or of proof. Where this doctrine does not apply, as well as where it does, a petition which specifies the act complained of 'with sufficient certainty to advise the defendant of the charge he is to meet, and then avers that such act was negligently done by the defendant, is a good pleading and is not fatally defective as stating a mere conclusion instead of the facts constituting the negligence. A general charge of negligence, which is predicated on an act of the defendant causing the injury, is good as against the objection that no cause of action is stated, and it is not necessary to state the specific facts showing the negligence in order to state a cause of action.

In State ex rel. Hopkins v. Daues, 319 Mo. 733, 6 S. W. (2d) 893, 897, this court en banc settled this question and said: ''The rule announced by WHITE, J., in Kramer v. Power Co., 311 Mo. 369, 279 S. W. 43, appears to be in harmony with the prior opinions of the court cited therein. In addition to Ehrlich v. Mittelberg, 299 Mo. 284, 252 S. W. 671, relied on by relator, we find the rule similarly stated in Simpson v. Wells, 292 Mo. 301, 237 S. W. 520, Winn v. Railroad, 245 Mo. 406, 151 S. W. 98, and other cases. These cases announce the correct rule that a general charge of negligence in a petition or answer is sufficient unless such pleading is properly assailed before verdict for want of definiteness. Such an allegation is sufficient when attacked after verdict for the first time. Such is the rule declared in the separate concurring opinion of WHITE, J., in the Kramer case, and that separate concurring opinion announced the controlling opinion of the court upon that point.'' The rule as stated by WHITE, J., in Kramer v. Power Co., supra, is that, ''In an action founded on negligence it is not necessary to state the specific

facts constituting the negligence. A general statement of facts is sufficient, particularly after verdict. A general allegation of negligence is good unless it is attacked for want of being sufficiently definite.''

In the late case of State ex rel. v. Haid, 328 Mo. 807, 41 S. W. (2d) 789, 790, we said: ''A charge of general negligence which is not challenged in the court below by motion to make more definite and certain, or otherwise, is good after verdict and will support a judgment. . . . In an action founded on negligence, it is not indispensable that plaintiff set out the facts constituting the negligence. If the petition specifies the act, the doing of which caused the injury, and avers generally that such act was negligently done, the petition is sufficient. Such a petition would be subject to a motion to make more definite and certain, but in the absence of such an attack, it would be good after verdict.''

█ It was ruled in Rueter v. Terminal Railroad Assn. (Mo. App.), 261 S. W. 713, on the authority of Bliss on Code Pleading, that ''the term 'negligence' is not, like fraud, a mere legal conclusion, or epithet applied to the act complained of. Negligence is a fact. . . . 'The general allegation of negligence is allowed as qualifying an act otherwise not wrongful. It is not the principal act charged as having caused the injury, but it gives color to the act, makes it a legal wrong; it is the absence of care in doing the act. . . . Negligence is one of the facts to be pleaded; it is not a conclusion of law but a conclusion of fact, an issuable, a substantive fact, to be inferred from evidential facts.' ''

█ █ As shown by the cases cited in the preceding paragraphs, the only proper method of attack on a petition which pleads general negligence in a proper manner is by motion to have same made more specific and definite by setting out the facts, showing the negligence, that is, pleading specific negligence. Where the case is one to which the doctrine of res ipsa loquitur does not apply, then such motion should be sustained and the pleader be required to specify the negligence and plead the facts showing same. If the case is one to which the doctrine of res ipsa loquitur applies, then such a motion should be overruled for the reason that only general negligence needs to be pleaded. If, as defendant here insists, this case is not one to which the doctrine of res ipsa loquitur applies as a rule of evidence, and the plaintiff cannot make a submissible case by proof of the relationship of passenger and carrier and by proof of the collision and the attendant circumstances for the reason that another party, the Morgan Company, was also sued, and as to it this doctrine does not apply, the defendant's remedy was by motion to make specific and definite. This it did not do and the question is not

914

here. Defendant is in the position of having gone to trial without objection on a petition charging general negligence only.

█ Having chosen to try this case on plaintiff's allegations of general negligence, the only question left to defendant is that there was a total failure of proof as to any negligence on its part. This point is saved to defendant by its demurrer to the evidence If the doctrine of *res ipsa loquitur* as a rule of evidence or as a method of proof be applied, that supplies the proof of specific negligence, and the jury might presume or infer and therefore find negligence from the happening of the accident and the way in which it did happen, unless the attendant circumstances refute or disprove, which they do not, any negligence. Defendant does not and could not well claim that this doctrine, if applicable, does not supply the necessary proof. The most that defendant can claim is that without giving the plaintiff the benefit of the *res ipsa loquitur* doctrine, which raises the presumption and permits an inference of negligence, there is no evidence sustaining a finding of negligence. In the present case, however, without the aid of the *res ipsa loquitur* doctrine, there can hardly be a question but that the jury was justified in finding *from the proven facts* that the motorman of this street car violated the high degree of care for his safety which defendant owed plaintiff as a passenger in causing this street car to violently collide with the standing truck, a state of facts which the jury could well find.

█ Nor do we think that, while courts of other jurisdictions may have done so, the courts of this State have or should adopt the rule that the doctrine of *res ipsa loquitur* does not apply to the carrier defendant, even in a case involving the relationship of passenger and carrier as to such defendant, where there are two defendants, as to the other of which such relation does not exist and that doctrine has no application. As such doctrine is largely founded on necessity, in order to enable a plaintiff to make a submissible case when otherwise he would not be able to do so because of his inability to know or ascertain the facts and because of the superior knowledge of the facts being in the other party, we see no logical reason why this doctrine should not apply to a tort-feasor where this relation does exist, merely because another possible tort-feasor is joined as a defendant. █ A plaintiff should not be compelled to confine his action to one tort-feasor only in order to be accorded the rights which the law gives him. The negligent acts of each defendant, in order to make a joint liability, must, of course, be concurrent and contribute to plaintiff's injury, but they need not, and generally are not, identical. The proof of one may be quite different from the proof of the other.

In Stauffer v. Railroad, 243 Mo. 305, 317, 147 S. W. 1032, where the plaintiff, a passenger, sued the street car company only for an injury

growing out of a collision with a steam roller, over whose movements and machinery the street car company did not have control, the court had no difficulty in holding that as to the street car company the doctrine of *res ipsa loquitur* applied. And in Clark v. Chicago & A. Railroad Co., 127 Mo. 197, 209, 29 S. W. 1013, where the injury was caused by a collision between cars on different railroads, over the other of which the one sued had no control or possession, the rule of *res ipsa loquitur* was held to apply because of the relationship of passenger and carrier.

The case of Olsen v. Citizens' Ry. Co., 152 Mo. 426, 432, 54 S. W. 470, and that of Yates v. United Rys. Co. (Mo. App.), 222 S. W. 1034, proceeded on the theory that where the relation of passenger and carrier existed between plaintiff and defendant, the doctrine of *res ipsa loquitur* applied in proving negligence, although a third party was also involved in and guilty of concurring negligence in causing the collision which resulted in plaintiff's injury.

This question was directly decided by the St. Louis Court of Appeals in two cases, Gibson v. Wells (Mo. App.), 258 S. W. 1, and Cecil v. Wells, 214 Mo. App. 193, 259 S. W. 844, in each of which cases the injury arose from a collision between a street car on which the plaintiff was a passenger and a truck owned and operated by another defendant. The injured passenger there sued both the street car company, by its receiver, and the owner of the truck, alleging general negligence as to the one and specific negligence as to the other. In the Gibson case the court noted that some courts have held that the *res ipsa loquitur* doctrine does not apply in a case where two tort-feasors are sued and the relation of passenger and carrier exists as to one only and that one does not have control of the other offending vehicle. The court then said: "In other jurisdictions, however, including Missouri, the fact that the other vehicle is not under the carrier's control does not prevent the application of the rule of *res ipsa loquitur*. [Cases cited.]" In the Cecil case that court ruled: "Defendant Wells (receiver), as a common carrier, owed to plaintiff, a passenger, the duty to exercise the highest degree of care for her safety. Proof of the collision, and consequent injury to plaintiff, though it be a collision between this defendant's car, in which plaintiff was a passenger, and a vehicle not under the control of this defendant, gives rise to a presumption of negligence on the part of this defendant through the application of the rule of *res ipsa loquitur*, casting upon said defendant the duty of showing that the collision was due to some cause which the exercise of the highest degree of care on his part could not have avoided." This ruling meets with our approval.

Plaintiff submitted his case to the jury without asking and without the court giving any instructions as to the law of the case

except an instruction on the measure of damages. The record discloses no objection made to doing this and no exception saved to any action of the court in submitting the case in this manner. We cannot, therefore, convict the trial court of any error in this respect.

The most serious question presented is whether the verdict of fifteen thousand dollars is so excessive as to require correction. As we have said, the injury was the result of the sudden and violent impact of the street car with the truck. Plaintiff was thrown from his seat forward to the floor of the car, striking his hip on the floor and the small of his back against the edge of the seat. He made his way home unassisted and called a doctor the next day. It seems that this doctor did not testify. The injury occurred on January 19, 1927, and a week or so later another doctor was called, who testified for plaintiff that his examination disclosed these conditions: "In his lumbar region was swollen and black and blue—sort of hemogenic underneath the skin and he had a little swelling in the back of his head and most of his pain and tenderness was in his back in the lumbar and ilio and sacral region and there was discoloration and swelling over that part." The treatment given was to immobilize his back by strips of adhesive, and he continued this treatment till he sent him for consultation with Dr. Horowitz. This doctor continued his treatment of him till the date of the trial in April, 1930, and said there was no improvement. When asked if his injury was permanent, he said: "I would judge from the improvement he has made that there is not much chance for any progress." On cross-examination he said he found no fractures or dislocations; that by contusions he meant bruises with what is termed black and blue discoloration.

Dr. Horowitz said that he examined plaintiff in June, some five months after the accident, and testified: "The complaint he made was of pain in the lower part of his back in the right side, and an examination was conducted of the entire body. He stood with his body slightly tilted to the left and the muscles on the right side of the back were spastic. Motions were limited, especially forward bending. His side motions were not so limited, but not full. He walked with a slight limp and stooping was difficult. There was numbness over the right side of the joint between the sacrum and the ilium—called sacroiliac joint. There was also tenderness over the junction of the sacrum with the last lumbar. There was tenderness down the right leg—the upper part of it, along the course of the sciatic nerve. Those were the main findings. I prescribed a brace for the purpose of immobilizing those parts, because I was satisfied of a stretching and weakening of the ligaments at the sacroiliac joint. That is an important part of the anatomy as a good part of the body weight is thrown on that joint. There was a stretching

or weakening of that joint and any motion that would jar that joint would produce pain and disability. The pain suffered in that joint is of a severe nature. He still continues to wear that brace. I think there is some weakness of that joint remaining. The injuries to the extent I have described are, in my opinion, permanent. Possibly they won't be at the end as marked as they were at first, but there will be some disability resulting. Considering the spasticity of the muscles and a tenderness there over a period of three years or more, I think there is an inflammatory process being set up at present. I think his ability to stand and do menial work, such as working at a wood-working machine and saws, involving his arms and the upper half of his body, with motions of stooping and bending, has been interfered with by this character of injury." On cross-examination he said that to a large extent he relied on what the patient said as to any pain or suffering; that his sideward movement was better than his forward movement; that he found no evidence of any fracture, dislocation or bone injury.

Another doctor said that he had examined the plaintiff at his attorney's request a short time before the trial. He described his then condition thus: "I found no abnormal changes to his head and neck, but from his sacrum up to his neck there is a board-like rigidity of the muscles; more marked on the right side. There is also a convexity of the spine drawn to the right side. The tenderness extended down from the sacrum. That is the wedge-shaped bone that extends here in the pelvis between these two large bones—extends down on the right side on what is known as the sacroiliac joint. In trying to execute some movements, I placed something on the floor and told him to pick it up and he couldn't stoop; he had to bend his knees to try to get it and at the same time support his back. Lateral movements from side to side were carried out in apparently marked pain. In placing him on his back, in trying to elevate the thigh against the abdomen it also caused severe pain and he couldn't execute the movements of his knees very well. I think he undoubtedly suffered a severe injury to the spinal column. The ligaments have undoubtedly been overstretched. That is also true of the joint known as the sacroiliac joint. The ligaments undoubtedly have been overstretched and when I examined him he had an arthritis of the spine and the sacroiliac joint. I would say that he will be reasonably certain to suffer pain in the future; that these injuries are of a permanent character. That constitutes a disability to a man whose pursuit in life is that of a working man. Any manual work will cause pain and increased disability." On cross-examination he said he found no bone injury, fracture or dislocation, or bone pathology, except the evidence of arthritis, which means an inflammation of the joint. That frequently accompanies rheumatism. Asked if it was not caused by

anything that causes bacteria to be thrown into the blood stream, he said: ''That is a hypothesis that is explained by the medical profession.''

For the defendant, Dr. Ambrose, who examined plaintiff shortly before the trial on agreement of counsel, testified: ''I found that he was wearing a leather brace about the loins or back. I found him to be a well developed man of good musculature. I examined particularly all of the muscular fluctures in the region of the back from the back of the neck down. The contour of the muscle structures seemed to be the same, that is, it looked the same on one side of the spine as it did on the other. There wasn't any evidence that I could see that the muscular structures were any different in any place in the back, comparing right to left. There was no wasting of the muscular structure. I tested out all the nerves that supply this region of the back and they responded normally. They were tested out particularly for sensation to see whether he felt everything up and down the spine. This sensation was tested out over the entire abdomen and the body especially below the waist. The spinal column was found be in correct position. He could bend the trunk without any difficulty but complained of pain in the small of the back when bending, especially forward. A complete examination of the nervous system was made and no abnormality was noted. Everything—all of the tests that I used to determine nervousness responded all right. His heart and lungs were examined and were all right. He is thirty-nine years of age. His blood pressure is all right. An infection of the mouth shows considerable infection about the teeth. I made some X-ray pictures of that region of the back that he complained of, the hip joints, the sacroiliac joints and the lumbar spine. There was nothing showing in these pictures that indicated anything wrong with the bony structures of the back. Arthritis is an inflammation of a joint and is caused principally by the absorption of some poison from within the body. It belongs to the rheumatism family. Arthritis can be caused by a trauma or a blow. It is most frequently caused by absorption of toxin or poison, or something in the head, like teeth and tonsils and things where there is pus. If there has been an arthritis existing since January, 1927, up until I examined him, it would be revealed by an X-ray picture. If the arthritis had existed in January, 1927, up until the time I examined Mr. Zichler, the X-ray would show evidence of some bone change. The X-ray did not show any evidence of any bone change.'' This doctor then exhibited two X-ray pictures which he had made and said that they did not show any bony abnormality, fracture, dislocation, curve, or arthritis of any kind; that the spine is perfectly straight. ''It is deemed necessary in the medical profession to take X-ray pictures of the parts complained of where they complain of injury to the bone

or joint.'' On cross-examination this witness said that X-ray pictures do not show injuries to the muscles or tissues except when same affects the bony structure. Many of the facts testified to by this doctor are not disputed.

The evidence further showed that about seven weeks after his injury, plaintiff returned to his regular work, at which he earned about forty dollars per week, and continued work for some six months. He says he was then discharged because not able to do the work efficiently. In a short time he obtained other work at thirty-three dollars per week, but when put to doing heavy lifting had to quit. Then he worked during the summer of 1928 soliciting life insurance, making about twenty dollars per week, and quit when bad weather came on. Then he worked for a time not shown for the Missouri Window Display Fixtures Company, making twenty-two to twenty-eight dollars per week. Plaintiff claims, of course, that his injuries gave him pain and interfered with continued and efficient work.

It must be conceded that the evidence shows plaintiff has suffered serious injury to the muscles and ligaments of his hips and back, that his earning capacity has been much impaired, and that he suffers more or less pain and inconvenience in his bodily movements. Most of his bodily functions remain unimpaired to a large extent and no marked physical change or loss in weight is shown. There was no fracture or dislocation or injury of any kind to any bone. There was little, if any, deformity and plaintiff used no artificial aid to locomotion. We are not disposed to minimize plaintiff's injuries, pain and suffering, or loss of earning power, but same can hardly be said to be greater than would follow from the loss of a leg or arm. We are, therefore, impelled to hold that a judgment for more than ten thousand dollars ought not to be allowed to stand. [Morris v. Atlas Portland Cement Co., 323 Mo. 307, 19 S. W. (2d) 865; Spencer v. Railroad, 317 Mo. 492, 297 S. W. 353; Kiefer v. City of St. Joseph (Mo.), 243 S. W. 104.]

If, therefore, the plaintiff will, within ten days, enter in this court a *remittitur* in the sum of five thousand dollars as of the date of the original judgment, the case will be affirmed and a judgment entered here for ten thousand dollars as of the date of the original judgment; otherwise, the case will be reversed and remanded. It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.