245 S.W.2d 96 (1952)
CARVER
v.
MISSOURI-KANSAS-TEXAS R. CO.
No. 42432.
Supreme Court of Missouri, Division No. 2.
January 14, 1952.
*98 John H. Haley, Jr., and Thomas R. McGinnis, St. Louis, for carver.
Carl S. Hoffman and Everett Paul Griffin, both of St. Louis, for Missouri-Kansas-Texas R. Co.
BOHLING, Commissioner.
The Missouri-Kansas-Texas Railroad Company, a corporation, appeals from a judgment for $52,500 recovered by Mary V. Carver, Administratrix of the estate of Jake Carver, deceased, in an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for the wrongful *99 death of Jake Carver, her husband. Defendant questions the submissibility of plaintiff's case, the admissibility of certain evidence, the giving and refusing of instructions, and contends the damages are excessive. Plaintiff also appeals and asserts error in the court's order of a remittitur of $15,000 from the $67,500 verdict as a condition to overruling defendant's motion for new trial, plaintiff having remitted said $15,000 but objected and excepted thereto.
Jake Carver was injured fatally on November 14, 1949, while employed as a member of one of defendant's Bridge and Building crews on defendant's interstate railroad track. Defendant was constructing new concrete abutments at each end of a bridge near Bluffton, Missouri, to replace the old abutments supporting wooden bents or braces, which in turn supported the stringers, supporting the ties to which the rails were spiked. Defendant's track runs east and west at the bridge and defendant's crew was working under the east end of the bridge. To replace the old abutment it was necessary to provide a temporary substitute to support the track. Some of the earth under the east approach was removed and leveled off east of the old abutment, and some of the old concrete had been dynamited. A temporary or false bent was framed out of 12 inch square dry Oregon fir. Its sill was 16 feet 2 inches long. Its cap was 16 feet 5½ inches long. It had five upright posts 48 inches long, and had sway braces on either side of 4 by 8 inches by 16 feet 4½ inches long.
On Friday, November 11, 1949, the temporary or false bent rested on wooden blocks on the ground underneath and perpendicular to the bridge and extended upward to within about 4 inches of the stringers. The space between the stringers and the cap of the bent had been shimmed in. The false bent was about 5 feet east of the old wooden bent on the concrete abutment, being about 4 feet east of the concrete, with a space of 20 to 24 inches between the wooden blocks and the concrete. To better support the bridge during the construction work, it was to be moved about 18 inches west, nearer the old abutment, but not so close as to interfere with the new construction work.
Clarence E. Brown, 21 years old, was foreman of the crew, and Claude Weber, also 21, was lead mechanic and acting foreman in Brown's absence. Brown testified that on November 11, just before quitting time, he discussed moving the false bent with Weber and some of the crew, telling them in moving the bent a chain should be used and fastened around the ties and the cap of the bent. One of the crew got a chain and placed it on the sill of the false bent.
On Monday morning, the 14th, the crew had assembled at the bridge when Brown received word he was to attend a Safety Rules meeting at Mokane. Brown testified he told Weber, who was to be in charge, to go ahead and move the bent and be sure and use a chain on it and jack it from the top, and also to work on the concrete. Brown then went to Mokane.
Weber, who had never moved bents similar to this one as an employee of defendant but had helped move a bent at St. Paul, Kansas, as a member of the crew, proceeded with moving the false bent 18 inches west. His plan was to jack the bent up tight against the stringers, drop a chain through the ties and around the cap of the bent to hold it while the men reset the blocks underneath the bent for its new position, then let the bent down on the blocks, release the chain, and move the bent west into position with manpower, using their hands or bars. Furlong, a crew member, asked Weber if he were going to put on the chain and Weber answered he was going to.
Under Weber's directions, several of the men took positions to steady the bent with their hands while it was being lifted. Mr. Carver and crewman Furlong were between the false bent and the old abutment, facing east, and other crew members were on the other side of the bent to steady it. A track jack, resting on level hard-packed clay, with some small rocks, was placed with its tongue under the bottom sill of the bent at its south end and another track jack was placed in a corresponding position at the *100 north end of said sill. The tongue of each jack extended out 3 inches from the jack and was 1½ inches wide at the jack and 1 1/4 inches wide at the end of the tongue. The shims between the cap of the bent and stringers of the bridge were removed. No chain was put on the bent. With the crew members steadying the bent, Weber at the north jack and a crew member at the south jack worked the jacks simultaneously and raised the bent 4 to 5 inches, placing its cap tight against the stringers of the bridge. Weber told the men it was tight and to come out.
Weber, defendant's witness, testified he did not want to walk underneath the bridge and started to go over the bridge to get the chain on the south side to fasten the bent but noticed the handle was still in his jack; and as he started to take it out, he noticed the bent was falling. He hollowed "look out," and tried to hold the bent but could not. The bent fell toward the west, toward the old bent. It fell to an angle of 45 degrees, caught Mr. Carver's head and held him in a hanging or standing position between the false and old bents, and knocked Furlong down, pinning him under the bent. Crew members released the two men. Carver died on the way to a hospital.
An inspection of the bent disclosed that the tongue of the north jack had splinters on it and had scoured out the center of the bottom of the sill.
Joseph J. Fuechter, a professional engineer, testified that the method used for moving the bent was not a safe and practical one; that the bent weighed approximately 1500 pounds and had a high center of gravity, making it fairly easy to tip; that it should have been lashed from the top to prevent its tipping and falling; and that with the tongue of the jacks parallel with the grain of the wood, the tongue was likely to cut into the wood and press the fibers unevenly and, under certain conditions, might cut all the way through.
Plaintiff has filed a motion to dismiss the appeal on the ground defendant's statement of the facts omits essential facts on which plaintiff relied and on the ground some of defendant's points and authorities do not comply with our rules. Rules 1.08 and 1.15, 352 Mo. appendix iii. We have examined defendant's "Statement" and "Points and Authorities," and find them subject to criticism and attack. A statement which omits the essential facts on which an appellant's adversary relies does not comply with our rules. Walker v. Allebach, 354 Mo. 298, 189 S.W.2d 282, 283[3]. Defendant states it endeavored to make a "concise" statement. Rule 1.08(a)(2) requires "a fair and concise statement of the facts without argument;" and fairness of statement is not to be sacrificed for conciseness. Some of the points in defendant's brief are stated sufficiently. Plaintiff, proceeding under Rule 1.08(c), has supplied a statement giving us plaintiff's view of the case and we are not required to search out for ourselves what is to be determined. In these circumstances, following precedent, plaintiff's motion to dismiss should be and is overruled. See v. Wabash R. Co., Mo.Sup., 242 S.W.2d 15, 16[1, 2]; Brown v. Citizens' State Bank, 345 Mo. 480, 134 S.W.2d 116, 118[1-3]; Holmes v. McNeil, 356 Mo. 846, 204 S.W.2d 303, 304[1, 2]; Nowlin v. Kansas City Pub. Serv. Co., Mo.App., 58 S.W.2d 324, 326[6].
Defendant's contention that plaintiff did not make a submissible case is not well taken. The gist of plaintiff's submitted theory was that defendant failed to have the top of the bent secure; that the failure to secure it was negligence, and that such negligence directly contributed to Mr. Carver's death, findings being required, among others, to that effect. The evidence favorable to plaintiff warranted findings that defendant's crew was engaged in work that was not safe, but hazardous, under the method being used, unless the top of the bent was lashed or made secure to prevent the bent from tipping and falling; that the bent fell after it pressed against the stringers and the men who had been steadying it released their holds when told by their foreman: "It is tight. Come on out"; and that it fell before the men between the two bents and in the direction of the fall had time to "come out." Weber, the assistant foreman, did not want to walk underneath the bridge, where the men had been steadying *101 the bent. The men were not engaged in simple manual work with simple tools, as were the situations in Williams v. Terminal R. Ass'n, 339 Mo. 594, 98 S.W.2d 651; Schaum v. Southwestern Bell Tel. Co., 336 Mo. 228, 78 S.W.2d 439, cases cited by defendant. The determinative factor is not that the result could be accomplished by several different methods but that the method actually undertaken was carelessly and negligently executed. If any negligence of Mr. Carver contributed to his injury it would not defeat a recovery if defendant were also negligent. 45 U.S.C.A. § 53.
Plaintiff's petition charged, so far as material, that the bent fell against Jake Carver; that the bent was, at the time it fell, under the exclusive control of employees of the defendant other than Jake Carver, and that it was caused to fall by the negligence of such other employees. Defendant filed a motion to dismiss and also a motion for a more definite statement on the ground the petition did not state a claim "based on the doctrine of res ipsa loquitur and general negligence." In plaintiff's opening statement to the jury plaintiff charged defendant with specific negligence. Plaintiff introduced evidence of and predicated recovery on specific negligence. Defendant moved that the case be dismissed at the close of plaintiff's opening statement and also objected to the introduction of any evidence by plaintiff on the ground plaintiff's opening statement did not state a claim against defendant under plaintiff's petition and the petition did not state a claim against defendant. Defendant contends error was committed in the overruling of said motions, citing Zichler v. St. Louis Pub. Serv. Co., 332 Mo. 902, 59 S.W.2d 654; Chandler v. Chicago & A. R. Co., 251 Mo. 592, 158 S.W. 35; Baysinger v. Hanser, 355 Mo. 1042, 199 S.W.2d 644; J. R. Watkins v. Baker, Mo.App., 236 S.W.2d 745. Defendant does not apply the cited authorities to the specific situations presented in the instant record.
Where general negligence is charged, a recovery may be had on proof of specific negligence within the general allegation. Jarboe v. Kansas City Pub. Serv. Co., 359 Mo. 8, 220 S.W.2d 27, 31[7, 9]; Cole v. Uhlmann Grain Co., 340 Mo. 277, 100 S.W.2d 311, 323. The motions to dismiss were properly overruled. Zichler v. St. Louis Pub. Serv. Co., 332 Mo. 902, 59 S.W.2d 654, 658[8-10]. In Johnson v. United States, 333 U.S. 46, 49, 68 S.Ct. 391, 92 L.Ed. 468, plaintiff sued under the Jones Act, 46 U.S.C.A. § 688, for injuries sustained when a shipmate permitted a block to fall which struck plaintiff on the head. The Jones Act makes the standard of liability of the Federal Employers' Liability Act applicable. The court stated, 333 U.S. loc. cit. 49, 68 S.Ct. loc. cit. 393: "And there is no reason in logic or experience why res ipsa loquitur is not applicable to acts of a fellow servant. * * * the Federal Employers' Liability Act compels us to go no higher than a fellow servant." See also Pitcairn v. Perry, 8 Cir., 122 F.2d 881, 883[3, 4]; Maxie v. Gulf, M. & O. R. Co., 356 Mo. 633, 202 S.W.2d 904, 911; Cantley v. Missouri-K.-T. R. Co., 353 Mo. 605, 183 S.W.2d 123, 127[5, 6]; 65 C.J.S., Negligence, § 220(8), p. 1017, n. 39. Defendant has not established error.
The court refused defendant's instruction to the effect that if the injury to Mr. Carver was the result of mere accident without negligence on the part of Mr. Carver or defendant, the verdict should be for defendant. Mr. Carver was injured from known actions of known persons and things, the falling of the bent which was not made secure by defendant's acting foreman to prevent its falling; and it has been held that an instruction on accident is not required in such circumstances by the weight of recent authority in this state. Hogan v. Kansas City Pub. Serv. Co., 322 Mo. 1103, 19 S.W.2d 707, 712[10], 65 A.L.R. 129; Wright v. Quattrochi, 330 Mo. 173, 49 S.W.2d 3, 4[1]; Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21, 25[13, 14]; Willard v. Bethurem, Mo.App., 234 S.W.2d 18, 22[5, 6]. Mere contributory negligence of Mr. Carver would not defeat recovery. 45 U.S.C.A. § 53. Under plaintiff's main instruction the jury were not authorized to return a verdict for plaintiff without finding defendant guilty of negligence.
Defendant complains of the omission of the "falsus in uno, falsus in omnibus" clause from the given instruction on the *102 credibility of witnesses, having requested an instruction embracing the clause. Defendant's main ground for the inclusion of the clause is that witness Brown, its foreman, gave a signed statement to its claim agent three days after the occurrence in which Brown made certain statements that differed from his testimony at the trial. Brown testified that he was "upset" because of the accident when he gave his statement to the claim agent. There was corroborating testimony supporting Brown's testimony at the trial.
Gillett v. Wimer, 1856, 23 Mo. 77, held the refusal of a falsus in uno instruction with respect to the testimony of a witness specifically named in the instruction was reversible error, and defendant says the case has never been overruled by this court. The holding in Gillett v. Wimer has long been departed from on the falsus in uno ruling by each division of the court, whether expressly overruled or not. It was not followed in Milton v. Holtzman, Mo.App.1919, 216 S.W. 828, 829[2], where it is stated that the giving or refusing of the instruction rests largely in the sound discretion of the trial court, citing, among others, State v. Hickam, 1888, 95 Mo. 322, 332, 8 S.W. 252, 257; White v. Maxcy, 1877, 64 Mo. 552, 559. The portion of the instruction given in the instant case has been considered to sufficiently submit the issue. Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 247[7, 8]; State v. Willard, 346 Mo. 773, 142 S.W.2d 1046, 1051[9-19]. See also State v. Foster, 355 Mo. 577, 197 S.W.2d 313, 322[22]; Quadlander v. Kansas City Pub. Serv. Co., 240 Mo.App. 1134, 224 S.W.2d 396, 399[4, 5]; Ford v. Dahl, 360 Mo. 437, 228 S.W.2d 800, 805[6]; State v. Buechler, 103 Mo. 203, 209(V), 15 S.W. 331, 332(5); State v. Summers, Mo.App., 281 S.W.123, 125[6, 7]; Annotations, 90 A.L.R. 74; 4 A.L.R.2d 1077. Abuse of the discretion resting in the trial court is not established.
Defendant's "points and authorities" attack plaintiff's verdict directing instruction, asserting (we state the substance of the statements) the instruction (1) fails to submit the evidentiary facts relied on to show negligence, (2) assumes negligence, (3) authorizes a finding of negligence not pleaded, (4) permits the jury to speculate and is confusing, (5) is indefinite and uncertain and fails to define important words and submit the true issues, (6) omits essential facts and submits a mere conclusion of law, (7) gives the jury a roving commission to find negligence, and (8) ignores conflicting issues of fact and fails to instruct on issues raised by them. This is followed by the citation of several authorities, the first three being Hall v. Manufacturers' Coal & Coke Co., 260 Mo. 351, 368, 369, 168 S.W. 927, 932, Ann.Cas. 1916C, 375; State ex rel. City of Jefferson v. Shain, 344 Mo. 57, 124 S.W.2d 1194, 1197, and Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541. We are not informed in the points and authorities wherein the instruction is defective in any of the eight allegations of error or the application of the cited cases to the above assertions or any of them. Our Rule 1.08(3)[1] contemplates, as did our former rules, a particularization in statement of the points relied upon and the citation of authorities to the specific points to which they apply, otherwise the presentation of controverted issues might well be limited to the argument. Consult, among others, Meierotto v. Thompson, 356 Mo. 32, 201 S.W.2d 161, 165[4]; Scott v. Missouri Pac. R. Co., 333 Mo. 374, 62 S.W.2d 834, 840[17, 18]; Aulgur v. Strodtman, 329 Mo. 738, 46 S.W.2d 172, 173[3, 4]; Willard v. Robertson, Mo.Sup., 129 S.W.2d 911, 913[4, 5]; Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 884[20], 179 S.W.2d 108; Metropolitan Properties Co. v. Rideout, 346 Mo. 787, 142 S.W.2d 1055, 1056[3]; Wahl v. Cunningham, 332 Mo. 21, 56 S.W.2d 1052, 1060[18]; Clay v. Owen, 338 Mo. *103 1061, 93 S.W.2d 914, 916[9, 10]; Brown v. Citizens' State Bank, 345 Mo. 480, 134 S.W.2d 116, 119[2]; Ford v. Wabash R. Co., 318 Mo. 723, 300 S.W. 769, 778[15]; Weatherford v. Spiritual Christian Union Church, Mo.Sup., 163 S.W.2d 916, 919[10].
We are loath not to rule on the merits. The instant instruction did not assume negligence but required a finding that the submitted facts constituted negligence. Negligence on the part of Mr. Carver at the time would not defeat a recovery if defendant were negligent, as the issue under the Federal Employers' Liability Act is whether defendant's negligence in whole or in part was a proximate cause of the injury or death. 45 U.S.C.A. §§ 51, 53. Just what Mr. Carver was doing was not an essential element of plaintiff's case and under another instruction the jury found his acts, if negligent, were not the sole negligence. The issue involved negligence at the time the bent fell; that is, negligence, if so, in not making it secure so it would not fall. The specific negligence submitted was within the charge of general negligence pleaded. The instruction might have required the finding of additional facts, but it submitted the substantive facts essential to a finding of negligence on the part of defendant. This was sufficient. Controverted nonessential facts were not required to be submitted. Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675, 679[2]; Vrooman v. Hill, 347 Mo. 341, 147 S.W.2d 602, 605[2].
Defendant's points and authorities question but do not particularize wherein plaintiff's measure of damage instruction is defective. The complaint seems to be that the instruction constituted a roving commission to the jury, permitting it to speculate, whereas it should have been limited to the evidence and the measure of recovery warranted by the evidence. The instruction limited the damages to such an amount "as you find and believe from the evidence to be the pecuniary loss due to the death of Jake Carver" et cetera. The portion of the instruction considered erroneous in White v. National Lead Co., Mo.App., 99 S.W.2d 535, 540[3], was not so limited; and defendant's other cases also do not establish error. Consult Dodd v. Missouri-K.-T. R. Co., 354 Mo. 1205, 193 S.W.2d 905, 907; Norfolk & W. R. Co. v. Holbrook, 235 U.S. 625, 628, 35 S.Ct. 143, 59 L.Ed. 392.
Defendant contends the testimony of plaintiff's witness, Joseph J. Fuechter, a consulting engineer, "as to the custom and practice of jacking up or moving a bent, and to testify to other matters as an expert" was error because the witness was not qualified and the matters testified to were not proper subjects for expert testimony and invaded the function of the jury. This witness' competency as an expert was sustained in Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S.W.2d 418, 423[3]. The witness gave testimony as to whether the method used in moving the bent was safe and practical and what methods would have been safe and practical. We think the testimony of a qualified witness as to proper and safe methods for moving a frame bent for the support of a railroad bridge pending its repair, the bent being 16 feet long, 6 feet high, made, of 12 by 12 inch fir, weighing 1500 pounds, with a high center of gravity, balanced on the tongue of jacks under a bridge in somewhat cramped quarters, without the bent being lashed or otherwise secured to prevent its falling after the men are told to cease steadying it, was a proper aid to a jury of laymen to pass upon the ultimate fact issue. Combs v. Roundtree Const. Co., 205 Mo. 367, 389(VI), 104 S.W. 77, 83(6); Hill v. St. Louis Pub. Serv. Co., 359 Mo. 220, 221 S.W.2d 130, 135[7]; Fair Mercantile Co. v. St. Paul F. & M. Ins. Co., 237 Mo.App. 511, 175 S.W.2d 930, 937[6, 7]. Negligence vel non is ruled by applicable principles of law and not by the custom and practice of individual defendants. Grosvenor v. New York Central R. Co., 343 Mo. 611, 123 S.W.2d 173, 177[5].
Defendant also presents like contentions against the qualifications and testimony of George T. Johnson, who testified as an expert with regard to the farm of the deceased. The witness had spent his life on a farm, except for the time he was in the service of his country, was a graduate of the University of Missouri College *104 of Agriculture, and was Associate County Agent in Montgomery County assigned to a "balanced farm ring" composed of approximately 70 farmers, whom he advised with respect to their farm operations. The record does not establish an abuse of discretion in permitting him to testify as an expert. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 606[7]; Fair v. Thompson, 240 Mo.App. 664, 212 S.W.2d 923, 928[3]; 20 Am.Jur. 684, § 814. The weight and value of his testimony was for the jury. Defendant does not specify any objectionable "matters testified to" in its points and authorities. The court sustained many of defendant's objections, overruling others. Error is not established.
The court, upon motion, ordered defendant to produce, among other things, certain photographs (snapshots) taken by defendant's claim agent November 17, 1949, three days after the occurrence. This suit was instituted December 14, 1949. Plaintiff's exhibits 2, 3, 4 and 5 were copies (enlargements) of the photographs, and defendant contends error was committed in admitting the exhibits in evidence, stating "some of the pictures were not well taken and one in particular was a distorted picture," and, stating the photographs were taken for defendant's law department in the preparation of its case and for its information and were privileged, error was committed in issuing the order to produce.
When plaintiff offered the originals in evidence it was stated that no objection was being interposed on the ground the exhibits were enlargements of the snapshots.
Members of defendant's crew testified that the exhibits fairly represented the conditions existing at the time Mr. Carver was injured with the exception that the bent had been moved 18 inches to the west, that is, into its new position. The exhibits were admissible with the explanation of the change shown. Reed v. Coleman, Mo.App., 167 S.W.2d 125, 133[13-15] and cases cited; Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713, 717[9].
Our statute authorizes the production, etc., upon motion and notice, "of any designated * * * photographs, * * * or tangible things, not privileged, which constitute or contain evidence material to any matter involved in the action and which are" in the possession of an adversary. R.S.1949, § 510.030, V.A.M.S. We have held the photographs were admissible in evidence. Defendant stresses Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. That case involved the production under the Federal rules of statements obtained and memoranda made by an attorney for the defendants as a result of private interviews with persons believed to have information concerning the occurrence involvedmemoranda, statements and mental impressions, 329 U.S.loc.cit. 498, 67 S.Ct. loc. cit. 387. The court held the burden rested on the movant who would invade the privacy of an attorney's course of preparation "to establish adequate reasons to justify production through a subpoena or court order" 329 U.S.loc.cit. 512, 67 S.Ct.loc.cit. 394; see also 329 U.S.loc.cit. 510 and 516, 67 S.Ct.loc.cit. 393 and 396, and that under the Federal rules the files, mental processes and work product of lawyers were not subject to discovery "in a situation of this nature as a matter of unqualified right" 329 U.S.loc.cit. 514, 67 S.Ct.loc.cit. 395. While the circuit court of appeals in the Hickman case, 3 Cir., 153 F.2d 212, 222[9], was of opinion the requested discovery should be denied on the ground, in part at least, of privilege, the United States Supreme Court stated it was "not protected from discovery on that basis" 329 U.S.loc.cit. 508, 67 S.Ct.loc.cit. 392. We have held that parties could not be compelled under our code to produce statements obtained from witnesses because such statements are not admissible as relevant evidence germane to the claim; and the Federal decisions, interpreting the more liberal Federal rules, are not applicable in determining the proper scope of our code. State ex rel. Thompson v. Harris, 355 Mo. 176, 195 S.W.2d 645, 646[2, 3, 11], 166 A.L.R. 1425; State ex rel. Miller's Mutual Fire Ins. Ass'n v. Caruthers, 360 Mo. 8, 226 S.W.2d 711, 713[3], among others. Prohibition is the appropriate remedy where the trial court exceeds its jurisdiction. State ex rel. Chicago, R. I. & P. R. Co. v. Wood, *105 316 Mo. 1032, 292 S.W. 1033, 1035[1]. The instant record states that plaintiff's motion was opposed by defendant and argued by counsel for plaintiff and defendant. All that transpired before the court is not disclosed. The order was entered upon the court "being sufficiently advised" and a presumption of a reasonable basis for the action attends said order. State ex rel. Cummings v. Witthaus, 358 Mo. 1088, 219 S.W.2d 383, 386[5], 8 A.L.R.2d 1124; State ex rel. St. Louis Union Trust Co. v. Sartorius, 351 Mo. Ill, 171 S.W.2d 569, 573[6]. Assuming right action in the issuance of the order, error is not established by the instant record. Consult also State ex rel. Iron Fireman Corp. v. Ward, 351 Mo. 761, 767[3], 173 S.W.2d 920, 922[6].
Plaintiff introduced in evidence a model of the bent involved, and defendant claims error. The evidence established that the model was one-sixth the size of the original and was a fair representation of said original. Defendant's cases, see for instance McCormick v. Lowe & C. Athletic Goods Co., 235 Mo.App. 612, 144 S.W.2d 866; Lynch v. Missouri-K.-T. R. Co., 333 Mo. 89, 61 S.W.2d 918, do not establish error. Consult Bloecher v. Duerbeck, 338 Mo. 535, 92 S.W.2d 681, 689[14].
Defendant contends plaintiff's counsel committed reversible error in the closing argument. The court complied with defendant's requests and sustained defendant's objection to the improper argument and instructed the jury to disregard it. The arguments were finished at 12:30 p. m. When court reconvened at 2:00 p. m., defendant moved that the jury be discharged, which motion was denied. The situation is like that in Counts v. Thompson, 359 Mo. 485, 222 S.W.2d 487, 493[9]. The court complied with the objections interposed at the time and we conclude reversible error was not committed in later refusing to discharge the jury. Shields v. American Car & F. Co., Mo.App., 293 S.W. 77, 78[2, 3]; Kelley v. Illinois Cent. R.Co., 352 Mo. 301, 177 S.W.2d 435, 441[10].
The court entered an order on defendant's motion for new trial to the effect that if plaintiff would remit $15,000 of the $67,500 judgment the motion would be overruled; otherwise it would be sustained on the ground the verdict was excessive. Plaintiff evidenced her dissatisfaction by objecting and excepting to the order but accepted the remittitur, and, contending the remittitur "was under the compulsion of a final order" which would sustain defendant's motion for a new trial, plaintiff seeks the reinstatement of the original judgment. Defendant has filed a motion to dismiss plaintiff's appeal.
There was no compulsion exerted on plaintiff under the instant order. Such orders are legally construed as then granting defendant a new trial on the ground the verdict is excessive with the privilege in plaintiff of retaining that portion of the judgment considered not excessive and defeating defendant's new trial. Steuernagel v. St. Louis Pub. Serv. Co., 361 Mo. 1066, 238 S.W.2d 426, 429[4]. Courts may not compel remittiturs. Cazzell v. Schofield, 319 Mo. 1169, 8 S.W.2d 580, 591[14]; Kennon v. Gilmer, 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110. For this reason remittiturs are conditioned upon the consent of the party affected, and the privilege of an election is given the plaintiff to accept the remittitur or refuse it. Consult Dodd v. Missouri-K.-T. R. Co., 354 Mo. 1205, 193 S.W.2d 905, 906[1]; Wicker v. Knox Glass Associates, Mo.Sup., 242 S.W.2d 566, 568[2, 9]. It is pointed out in Counts v. Thompson, 359 Mo. 485, 502[8], 222 S.W.2d 487, 495[15-19], that counsel for injured plaintiffs sought the establishment of the remittitur practice that a judgment for a proper amount be entered to avoid the delay and expense of another trial. Burdict v. Missouri Pac. R. Co., 123 Mo. 221, 238, 27 S.W. 453, 456, 26 L.R.A. 384, 45 Am.St.Rep. 528, and the cited Missouri cases. See also Cook v. Globe Printing Co., 227 Mo. 471, 546, 127 S.W. 332, 359. An award of excessive damages is wrong, justifying a new trial to defendant, but defendant has no voice in plaintiff's election to accept or refuse a remittitur. By accepting the remittitur plaintiff obtains a judgment he otherwise would not hold, deprives defendant of a new trial and puts the trouble and expense of an appeal upon *106 defendant. Plaintiff's acceptance is based upon his voluntary consent, Burdict v. Missouri Pac. R. Co., 123 Mo. 221, 241, 27 S.W. 453, 457, 26 L.R.A. 384, and he may not question the validity of the order after accepting it. Kennon v. Gilmer, 131 U.S. 22, 30, 9 S.Ct. 696, 33 L.Ed. 110; Koenigsberger v. Richmond Silver Min. Co., 158 U.S. 41, 52, 15 S.Ct. 751, 39 L.Ed. 889; Florida East C. R. Co. v. Ruckles, 83 Fla. 599, 92 So. 159[1, 2]; McDaniel v. Hancock, 328 Mich. 78, 43 N.W.2d 68, 72[5, 6], citing cases; 4 C.J.S., Appeal and Error, p. 407, § 213; 39 Am.Jur. 206, § 213, n. 8-11. Defendant's motion to dismiss is sustained.
We now reach the troublesome question of the amount of the damages. The real complaint of defendant is that, notwithstanding the $15,000 remittitur, the $52,500 judgment remains excessive. The fact that a verdict is excessive does not in and of itself establish that it was the result of passion and prejudice. Hayes v. Wabash R. Co., 360 Mo. 1223, 233 S.W.2d 12, 18; Joice v. Missouri-K.-T. R. Co., 354 Mo. 439, 189 S.W.2d 568, 576[25], 161 A.L.R. 383; Hancock v. Kansas City Term. R. Co., 347 Mo. 166, 146 S.W.2d 627, 630[3]. Plaintiff's measure of damage instruction sought the recovery of compensation for loss of the pecuniary benefits the beneficiaries might reasonably have received had the employee not died from his injuries. Hancock v. Kansas City Term. R. Co., 339 Mo. 1237, 100 S.W.2d 570, 580; Copeland v. Terminal R. Ass'n, 353 Mo. 433, 182 S.W.2d 600, 606[8].
At the time of his death Jake Carver was 44 and Mary V. Carver, his widow, was 38 years old. Their expectancies were 26.69 and 35.02 years, respectively. They had married in 1931 and had five children, four of whom were dependents, being 16, 13, 9 and 4 years old when he died.
Mr. Carver was a farmer. He was also a substitute mail carrier and at times worked temporarily for defendant. He was injured while working for defendant in 1945 and received $3,000 in settlement. He had been a tenant farmer. On February 18, 1946, he purchased a 240 acre farm, having about 140 acres in timber, for $3,500, giving back a part-purchase price mortgage, securing $1,000 at 5%, and taking the title in the names of himself and wife as an estate by the entirety. No payments had been made on the principal at the time of trial. He cultivated 40 acres of the land, had 60 acres in grass, and intended to have a stock farm.
Plaintiff seeks to sustain the $52,500 award on the basis of an annual contribution by Mr. Carver to the family, exclusive of his personal maintenance, of $3,662 (total income $4,692 less $1,030), claiming a present value thereof, computed on a 2½ basis, of $69,489. Mrs. Carver was the only witness testifying to facts upon which to base a computation; and her estimates for 1949 are itemized as follows: "For carrying mail $200; From sawmill work $300; From the sale of live stock $410; From the sale of grain $432; From the sale of chickens and eggs $360; Live stock ready for sale of the value of $725; Grain ready for sale of the value of $320; Food used by the family of the value of $1,945Total $4,692." They also received $50 annual rent for an option to mine clay on part of the farm. Mrs. Carver stated she could not give the figures for 1948; but she thought they sold $510 worth of live stock, $800 worth of timber, and the chickens and eggs were "around" $360. Estimates for prior years were not given. Farm laborers received minimum of 50 cents an hour in that vicinity.
The $1,945 item for food for the family was based on the prices Mrs. Carver had observed placed on foods in the stores. Such prices would include the expenses and profits of the processor, the wholesaler, and the retailer. The $800 item for sale of timber in 1948 was not an annual income, but a depletion of capital owned by Mr. and Mrs. Carver. We find no affirmative showing that there was no overlapping on an annual basis in the items for the sale of live stock and grain and value of live stock and grain on hand. Mrs. Carver held an interest in the land on which the live stock and grain were raised. She continued to receive the $50.00 annual rent on the mining option. She was the principal one handling the chickens and eggs, *107 but she could not state how many dozen eggs were produced in 1949 and did not know how many she sold. Asked whether her figure of $360 was high, she answered: "I don't know." She testified they kept no records of what was produced or sold from the farm and she could not give the expenses incurred. She stated Mr. Carver tried to put $500 back in the farm annually. They had no bank account. Her testimony was from memory. She did not know what profits the farm yielded in 1949, thought there were some, $100 or $200, but did not know about $300. Asked if all her figures were speculative, she answered: "They could be a little wrong. Q. Well, they could be a whole lot wrong, couldn't they? A. I wouldn't know. Q. They could be very much too high, couldn't they? A. I don't know." We need not develop additional facts of record on the issue.
The litigants stress the cases of Hampton v. Wabash R. Co., 1947, 356 Mo. 999, 204 S.W.2d 708, 713[7, 8], and Mooney v. Terminal R. Ass'n, 1945, 353 Mo. 1080, 186 S.W.2d 450, 455[10-12]. The Hampton and Mooney cases involved considerations of wages of $162.44 and $200 monthly, respectively. Hampton was 28, with an expectancy of 33.03 years, at the time of death. He left a widow and two sons. A verdict for $40,000 was sustained. Mooney and his wife were 30 years of age at the time of his death, and he left two infant children surviving. A $45,000 verdict was reduced to $35,000 in the trial court, which was sustained here. A number of earlier cases are reviewed in the Mooney case. In Ford v. Louisville & N.R. Co., 1946, 355 Mo. 362, 196 S.W.2d 163, 170, the employee was 51, and was contributing $200 monthly to the support of his family consisting of his wife and seven children. A verdict for $45,000 was ordered reduced to $30,000 in this court. See Finley v. St. Louis-S. F. R. Co., 1942, 349 Mo. 330, 160 S.W.2d 735, 740[9].
Giving consideration to the allowable items established by substantial evidence in the record before us, to the present economic conditions, the age of deceased, his earnings and all other pertinent factors, we conclude a judgment in excess of $40,000 should not be permitted to stand. A number of the cases considered present more favorable evidence for the plaintiff than the instant record.
If plaintiff will remit $12,500 within fifteen days, the judgment will be affirmed as of its date for $40,000; otherwise the judgment will be reversed and the cause remanded for a new trial.
WESTHUES and BARRETT, CC., concur.
PER CURIAM.
The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All concur.
NOTES
[1] Rule 1.08. "The brief for appellant shall contain: * * * (3) The points relied on, which shall specify the allegations of error, with citation of authorities thereunder; provided, however, it more than three authorities are cited in support of a point made, the three authorities principally relied on shall be cited first; and (4) An argument."